STATE, Respondent, v. ISHAM, Appellant.

*No. State 162 (1974). Argued October 30, 1975.—Decided November 25, 1975.*
(Also reported in 235 N. W. 2d 506.)

For the appellant there was a brief by *Coffey, Murray & Coffey,* attorneys, and *William M. Coffey* and *William U. Burke* of counsel, all of Milwaukee, and oral argument by *Mr. Burke.*

For the respondent the cause was argued by *Michael R. Klos,* assistant attorney general, with whom on the brief was *Bronson C. La Follette,* attorney general.

ROBERT W. HANSEN, J. One-half hour after the commission of a rape, the defendant, who fit the description of the rapist given by the victim, was found walking with untied shoes two and one-half blocks from the scene of the crime. He was taken to the home where the rape occurred for a confrontation with the victim of the crime for identification purposes. The victim of the rape identified the defendant as the rapist, first by hearing his voice, then by observing his person. Several challenges are made to the procedure followed and each such challenge will be separately reviewed.

*One-to-one.* We have here an on-the-scene confrontation, proximate in time and space to the crime committed. Necessarily, it involved only the victim of the crime and the person suspected of committing the crime. The defendant finds constitutional infirmity or per se suggestiveness in its one-to-one aspect. However, this exact

police procedure was upheld by this court in the recent case of *Johnson v. State.*[1] There, following the robbery of a grocery store, a defendant who generally fitted the description given by the store owner and who was in the area soon after the time of the crime, was taken by the police to the scene of the crime. There he was identified as the robber by the store owner who looked at him through the store window. Our court held "entirely reasonable" the procedure followed,[2] giving as one reason for so concluding the fact that ". . . the identification took place soon after the incident while the memory of the witness was still fresh,"[3] quoting a federal appeals court decision holding that such circumstances of fresh identification "promote fairness, by assuring reliability."[4] A one-to-one identification is not, by such fact alone, rendered either suggestive or impermissible. We find the procedure for on-the-scene identification entirely proper as a one-to-one identification.

However, the defendant here goes further to suggest that the police were here obliged to conduct a staged lineup at the police station for any visual identification. Defendant's brief states that the police ". . . took no pre-

---

[1] (1970), 47 Wis. 2d 13, 176 N. W. 2d 332.

[2] *Id.* at page 18, this court holding: "It was, however, entirely reasonable for the officers to take the defendant past the grocery store which was but a short distance from the place of his apprehension and within a very short time after the commission of the offense. There is no indication in the record of any police desire or intention to deal with the defendant unfairly or to do anything but ascertain the perpetrator of the robbery."

[3] *Id.* at page 18.

[4] *Wise v. United States* (D. C. Cir. 1967), 383 Fed. 2d 206, 209, 210, the court there holding: "Here was a confrontation proximate to the scene and time of the offense as well as the apprehension, where the observers and actors were limited to those that were in fact present at the scene and time of the offense and the chase. Here were circumstances of fresh identification, elements that if anything promote fairness, by assuring reliability, and are not inherently a denial of fairness."

cautions to try to insure a fair visual identification. No line-up was held." None was required. Our court has negatived the idea that either a one-to-one or one-out-of-a-crowd identification is, ipso facto, suggestive.[5] Our court has recognized the appropriateness in some situations of what it termed "a police station 'showup' or one-to-one identification."[6] In fact, in the *Johnson Case,* the second reason given for upholding on-the-scene identifications was that ". . . imposing staged lineup requirements would require that all suspects be taken to a station house and held while identification at the scene could possibly allow a citizen to be on his way and enable the police to continue their efforts."[7] If there is any preference to be implied, it is for the on-the-scene identification approach rather than at-the-station or staged-lineup confrontation.

*Under the circumstances.* Aside from the one-to-one character of the identification, the defendant claims suggestiveness in the special circumstances under which this particular identification was conducted. The reference is primarily to the fact that the police officers told the victim that the person whose voice she was about to hear was a "suspect." That fact must have been obvious without mention. The police would not ask a victim to identi-

[5] *See: Jones v. State* (1973), 59 Wis. 2d 184, 193, 207 N. W. 2d 890, this court holding: "If the trial court was holding such observation, either one-to-one or one-out-of-a-crowd, to be per se suggestive, the ruling could not stand."

[6] *State v. Russell* (1973), 60 Wis. 2d 712, 720, 211 N. W. 2d 637.

[7] *Johnson v. State, supra,* footnote 1, at page 19. *See also: State v. DiMaggio* (1971), 49 Wis. 2d 565 586, 182 N. W. 2d 466, certiorari denied (1971), 404 U. S. 838, 92 Sup. Ct. 127, 30 L. Ed. 2d 70, this court holding: "We believe that prompt identification, or lack of identification, promotes justice for victim and suspect. An immediate confrontation is inherently more reliable than a delayed one, while failure to identify terminates any inconvenience to the suspect."

fy a person as a perpetrator of a crime if the police did not believe that such person was at least a "suspect" or possible perpetrator of the crime. Where photographs were handed to a victim with a police officer stating, "I believe the person would be in it," our court found no impermissible suggestiveness, stating: "In the very act of handing photographs to an attack victim it is implied that the attacker's picture could be among them . . . ."[8] In fact, the issue to be decided is not so much a matter of suggestiveness as it is "whether, under the totality of the circumstances, the identification was reliable."[9] In the case before us, we see no way in which the statements complained of could, or did, affect in any way or manner the reliability of the identification made.

*Probable cause.* Here the police took three separate steps: (1) They stopped the defendant on the street for questioning; (2) they detained him for a confrontation with the victim of the crime; and (3) they placed him under arrest on a charge of rape after he had been identified by the victim. When the police stopped the defendant for questioning, they "clearly placed his liberty, at least to keep on walking, under their will and con-

[8] *Fells v. State* (1974), 65 Wis. 2d 525, 537, 538, 223 N. W. 2d 507. *See also: People v. Lynch* (1969), 111 Ill. App. 2d 52, 65, 249 N. E. 2d 649, the court there noting: ". . . the police only told them that they had a 'suspect' for them to view and did not say they had arrested the man who robbed the store." *See also: Roper v. Beto* (5th Cir. 1971), 454 Fed. 2d 499, 503, certiorari denied (1972), 406 U. S. 948, 92 Sup. Ct. 2053, 32 L. Ed. 2d 336, the appeals court holding: "True, complainant did go to the police station with the knowledge that the police did have a suspect, but such suggestiveness is practically inherent in any one man confrontation."

[9] *State v. Russell, supra,* footnote 6, at page 721, this court holding: "The controlling consideration is not so much whether the procedure was suggestive but whether, under the totality of the circumstances, the identification was reliable."

trol."[10] But he was not thus and then placed "under arrest."[11] When the circumstances, plus his responses to interrogatories, made reasonable further investigation through a confrontation with the victim of the crime in the nearby house, the defendant remained in police custody, even though he was not then placed under arrest for the commission of a criminal offense. As the United States Supreme Court has observed: " '. . . It would have been poor police work indeed for an officer . . . to have failed to investigate this behavior further.' "[12] The

[10] *See: State v. Beaty* (1973), 57 Wis. 2d 531, 537, 205 N. W. 2d 11, this court holding: "When the two police officers stopped the defendant, they clearly placed his liberty, at least to keep on walking, under their will and control."

[11] *Id.* at pages 537, 538, this court holding: "The United States Supreme Court has distinguished arrest from stopping to question a suspect, terming arrest 'a wholly different kind of intrusion upon individual freedom than a limited search for weapons,' with the 'interests each is designed to serve . . . likewise quite different.' An arrest, the high court stated, is 'inevitably accompanied by *future interference* with the individual's freedom of movement, whether or not trial or conviction ultimately follows.' . . . Obviously, stopping a suspect to question him—and to frisk him for weapons—does not involve such certainty of continued or future restraint. It may, but not necessarily so.

"On the matter of stopping to question versus arrest, the *Terry Case* refers to a leading text where the author states:

" 'Arrest . . . is a distinct operational step in the criminal justice process, involving all police decisions to interfere with the freedom of a person who is suspected of criminal conduct *to the extent of taking him to the police station for some purpose.*

" '. . . A basic distinction employed in this volume is that between actually taking a suspect to the station *and the preliminary investigative devices of stopping and questioning, frisking, and conducting an on-the-spot search.*' " (Quoting *Terry v. Ohio* (1968), 392 U. S. 1, 26, 88 Sup. Ct. 1868, 20 L. Ed. 2d 889, in turn quoting W. LaFave, *Arrest—The Decision to Take a Suspect into Custody* (1965), page 4. (Emphasis given in *Beaty* opinion.)

[12] *Id.* at page 538, quoting *Terry v. Ohio, supra,* footnote 11, at page 23.

United States Supreme Court has held that " 'a police officer may in appropriate circumstances and in an appropriate manner approach a person for purposes of investigating possibly criminal behavior even though there is no probable cause to make an arrest.' "[13] It follows, we believe and hold, that, in appropriate circumstances and in an appropriate manner, the police may continue the detention of a person thus questioned for the purpose of a confrontation with the victim of a crime that was proximate in time and space. In a similar situation, our court has upheld the taking of persons in the immediate vicinity to the victim of a crime for the investigative purpose of determining if any of them might be identified as the perpetrators of the crime.[14] The test as to the right to continue custody is then, not probable cause to arrest,[15] but reasonable grounds for thus continuing the investigative effort. The question to be asked is, Was it reasonable under these circumstances for the police to take the defendant two and one-half blocks to the scene of the crime for the purpose of a confrontation for identification purposes? In answering this question it

[13] *Adams v. Williams* (1972), 407 U. S. 143, 145, 92 Sup. Ct. 1921, 32 L. Ed. 2d 612, quoting *Terry v. Ohio, supra,* at page 22.

[14] *See: State v. Gray* (1973), 57 Wis. 2d 756, 758 (No West citation).

[15] As to the test as to probable cause to arrest, *see: State v. Paszek* (1971), 50 Wis. 2d 619, 624, 184 N. W. 2d 836, this court holding: "Probable cause to arrest refers to that quantum of evidence which would lead a reasonable police officer to believe that the defendant probably committed a crime." *See also: Adams v. Williams, supra,* footnote 13, at page 148, the United States Supreme Court holding: "Probable cause to arrest depends 'upon whether, at the moment the arrest was made . . . the facts and circumstances within [the arresting officers'] knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the [suspect] had committed or was committing an offense.' *Beck v. Ohio,* 379 U. S. 89, 91 (1964)."

is " 'all of the circumstances that are to be considered in determining what was reasonable police procedure in the particular situation.' "[16]

The distinction as to the status of one continued in police custody for the investigative purpose of a confrontation with the victim of a crime, proximate in time and space, and the status of one placed under arrest for the commission of a crime is not highly material in the case before us because the police officer who stopped the defendant for questioning clearly had reasonable grounds for continuing the investigation and probable cause to place the defendant under arrest. At the time of the stopping, the police officer had been advised over the police radio that a break-in of a home two and one-half blocks from where the defendant was walking had occurred. He had been given a description of the suspected assailant as a man with short-sleeved shirt or sweater, dark pants and barefooted. He observed the defendant as wearing a blue knit sweater with three-quarter length sleeves, dark blue pants and wearing work shoes that had the laces untied. He observed blood on the defendant's nose and shirt and noted the strong smell of alcohol on defendant's breath. The defendant was asked if he lived in the area, and answered that he did not. The defendant could provide no explanation for his being in the neighborhood at the midnight hour, nor as to his means of transportation for getting there. Given these facts and circumstances, with the defendant found walking with untied shoes two and one-half blocks from the scene of the crime and fitting the general description of the person suspected, the police officer had ample grounds to insist upon the confrontation and had probable cause to place the defendant under arrest at

[16] *State v. Williamson* (1973), 58 Wis. 2d 514, 520, 206 N. W. 2d 613, quoting *State v. Chambers* (1972), 55 Wis. 2d 289, 297, 198 N. W. 2d 377.

that time. The surrounding circumstances would certainly lead a reasonable police officer to conclude that defendant's guilt was "more than a possibility."[17]

*Self-incrimination.* Defendant's contention is that the conceded absence of *Miranda* warnings[18] prior to the voice and visual identifications renders such identifications constitutionally infirm. It is conceded that the *Miranda* requirement applies only to evidence of a "testimonial or communicative nature."[19] Defendant argues that, since the voice identification stemmed from his answering the questions as to his name and address, it was evidence of a "testimonial or communicative nature." It is true that the voice of the defendant was used, but as to "an identifying physical characteristic, not to speak his guilt."[20] The United

[17] *See: State v. Paszek, supra,* footnote 15, at page 625, this court holding: "It is not necessary that the evidence giving rise to such probable cause be sufficient to prove guilt beyond a reasonable doubt, nor must it be sufficient to prove that guilt is more probable than not. It is only necessary that the information lead a reasonable officer to believe that guilt is more than a possibility."

[18] *Miranda v. Arizona* (1966), 384 U. S. 436, 86 Sup. Ct. 1602, 16 L. Ed. 2d 694.

[19] *See: Schmerber v. California* (1966), 384 U. S. 757, 761, 86 Sup. Ct. 1826, 16 L. Ed. 2d 908, the United States Supreme Court stating: "We hold that the privilege protects an accused only from being compelled to testify against himself, or otherwise provide the State with evidence of a testimonial or communicative nature, and that the withdrawal of blood and use of the analysis in question in this case did not involve compulsion to these ends."

[20] *United States v. Wade* (1967), 388 U. S. 218, 222, 223, 87 Sup. Ct. 1926, 18 L. Ed. 2d 1149, the court holding: "It is no different from compelling Schmerber to provide a blood sample or Holt to wear the blouse, and, as in those instances, is not within the cover of the privilege. Similarly, compelling Wade to speak within hearing distance of the witnesses, even to utter words purportedly uttered by the robber, was not compulsion to utter statements of a 'testimonial' nature; he was required to

States Supreme Court has made clear that the privilege against self-incrimination " '. . . offers no protection against compulsion to submit to fingerprinting, photographing, or measurements, *to write or speak for identification,* to appear in court, to stand, to assume a stance, to walk, or to make a particular gesture.' "[21] The phrase italicized describes the situation in the case before us. The privilege as to not incriminating oneself does not reach to words spoken, not for content, but to demonstrate the voice level and voice characteristics. The *Miranda* requirements relate only to the privilege against self-incrimination.[22] The *Miranda* rule covers only evidence of a testimonial nature which might incriminate a person. The speaking of words to establish level and characteristics of speaking is not such evidence. The claim of constitutional infirmity to a voice identification that was not preceded by giving the *Miranda* warnings is rejected.

*Instructions to jury.* Defendant complains about an asserted failure of the trial court to give two requested instructions—one relating to the identification of the defendant, the other relating to circumstantial evidence. As to the first, defendant requested the court to instruct the jury that the state had the burden of proving beyond a reasonable doubt the identity of the defendant "as the perpetrator of the crime charged." The trial court stated

use his voice as an identifying physical characteristic, not to speak his guilt."

[21] *Id.* at page 223, quoting *Schmerber v. California, supra,* footnote 19, at page 764. (Emphasis supplied.)

[22] *See: Kirby v. Illinois* (1972), 406 U. S. 682, 688, 92 Sup. Ct. 1877, 32 L. Ed. 2d 411, the court holding: ". . . the *Miranda* decision was based exclusively upon the Fifth and Fourteenth Amendment privilege against compulsory self-incrimination, upon the theory that custodial *interrogation* is inherently coercive." (Emphasis by the court.)

that it would so instruct the jury.[23] The trial court instructed the jury that the state was required to ". . . prove to your satisfaction beyond a reasonable doubt that the defendant is guilty of such respective crime charged therein and of every element thereof, including the necessary factor that he is the specific perpetrator thereof. . . ." That was sufficient and appears to have been agreed to by defense counsel. As to the second instruction requested, the trial court refused to give the requested standard instruction on circumstantial evidence,[24] holding that the case of the state was based on direct, not circumstantial, evidence. The record supports the trial court. The basic issue went to identification, and rested on direct testimony. Where circumstantial evidence is not relied upon either wholly or substantially, the trial judge is not required to give the circumstantial-evidence instruction.[25]

*Sufficiency of evidence.* As to the rape conviction only, the defendant contends that the evidence is insufficient to support conviction because it does not establish that the complainant's resistance was overcome by threat of harm *to her.* The reference is to the complainant's testimony that her assailant said by way of threat to harm: "don't say anything, don't scream, there's a man in the other room with your brothers, and if you say anything they will kill them." The statute does not support defendant's

---

[23] *"The Court:* . . . I may include it [the requested instruction on proof of identity] in an omnibus statement in every element of the offense, including this particular element, but calling for the necessity of proof beyond a reasonable doubt of identification of the defendant.

*"Defense Counsel:* I think that I could not object to that, Your Honor, in terms of the general instruction that the burden of proof is on the State to prove every essential element of the crime, including the identity of the defendant."

[24] Wis J I—Criminal, Part I, 170.

[25] *See: Zdiarstek v. State* (1972), 53 Wis. 2d 420, 429, 192 N. W. 2d 833.

contention. It provides that the crime is that of sexual intercourse with a female he knows is not his wife "by force and against her will." (Sec. 944.01 (1), Stats.) What is meant by the phrase "by force and against her will" is statutorily spelled out to be "either that her utmost resistance is overcome or prevented by physical violence or that her will to resist is overcome by threats of imminent physical violence likely to cause great bodily harm." (Sec. 944.01 (2), Stats.) There is no statutory requirement that the threat of imminent physical violence be directed against the woman about to be raped. Our court has said: "The law does not require a woman to become a martyr to test by resistance the sincerity of a threat to rape at gunpoint."[26] Under the statute it is as clear that she need not sacrifice to such possible martyrdom her two younger brothers, asleep in a nearby bedroom. The sole test is whether the threat of an "imminent physical violence likely to cause great bodily harm" did prevent continued resistance and accomplish the act of sexual intercourse against the will of the rape victim. In this case the threat that her younger brothers would be killed by a man in their bedroom if the victim continued to resist was sufficient and did in fact overcome her will to resist and accomplish a rape by force. As this court said, in a case where a mother who was raped testified that one of her concerns was for the safety of her children sleeping nearby: "It is not required that she [the rape victim] do more, when she did enough to establish the nonconsensual character of the assault between her thighs."[27] Such nonconsensual character of the rape, accomplished by threat of death coming to younger brothers nearby if resistance continued, is clearly established in the case under review.

[26] *State v. Herfel* (1971), 49 Wis. 2d 513, 519, 182 N. W. 2d 232.
[27] *Madison v. State* (1973), 61 Wis. 2d 333, 337, 212 N. W. 2d 150.

Defendant appends the suggestion that this record "taken in its entirety" gives reason for the granting of a new trial in the interest of justice. This would require our court to find that justice has probably miscarried in this case. On this record we cannot do that, and instead affirm the convictions of this defendant on charges of rape, sexual perversion and burglary.

*By the Court.*—Judgment affirmed.