STATE of Wisconsin, Plaintiff-Respondent,

v.

Timothy L. KAELIN, Defendant-Appellant.

Court of Appeals

*No. 94–2136–CR. Submitted on briefs May 10, 1995.—Decided June 21, 1995.*

(Also reported in 538 N.W.2d 538.)

3

4

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Thomas J. Flanagan* of *William J. Chandek & Associates* of Brookfield.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *James E. Doyle*, attorney general, and *Susan K. Ullman*, assistant attorney general.

Before Brown, Nettesheim and Snyder, JJ.

SNYDER, J.   Timothy L. Kaelin appeals from a judgment of conviction for burglary as a repeat offender. Kaelin contends that out-of-court identifications made by two witnesses at the scene of the crime should have been suppressed because they were the result of impermissible suggestiveness by police. We conclude that under the totality of the circumstances, the "showup" procedure in this case was not impermissibly suggestive and therefore we affirm the judgment.

The issues on appeal arise out of the burglary of the Kenosha V.F.W. Post in the early morning of December 3, 1993. Upon entering the V.F.W. for work that morning, custodian Randy Miller immediately noticed that ceiling tile had been knocked to the floor and that a portable radio was on the bar. When he went to call the police, he observed a dark-haired man wearing a blue jacket move around a corner and out the door. Albert Miller, Randy's father and also a custodian

at the V.F.W., was pulling into the driveway of the V.F.W. when he observed a dark-haired man wearing a blue jacket and weighing approximately 160 to 180 pounds run out the front door and across the street. Neither Randy nor Albert saw the burglar's face.

Kenosha police responded to Randy's call and searched the immediate vicinity for the man described by the Millers. Officer Steven Larson spotted a man fitting the description two blocks from the V.F.W. and chased him on foot until he was able to apprehend him. Larson then arrested the man, who he identified as Kaelin, placed him in handcuffs and brought him back to the V.F.W. for the Millers to identify. Approximately fifteen to thirty minutes elapsed from the time police received the burglary call and the time Larson brought Kaelin back to the V.F.W. Albert positively identified Kaelin from behind after he requested that police take Kaelin out of the car and turn him around; Randy identified Kaelin "by the jacket and his hair."

Kaelin was later charged with burglary contrary to § 943.10(1)(a), STATS., possession of burglarious tools contrary to § 943.12, STATS., and resisting arrest contrary to § 946.41(1), STATS., all as a repeater contrary to § 939.62, STATS. A preliminary hearing was held and the trial court subsequently bound Kaelin over for trial. Kaelin filed a motion to suppress both the showup identification and the subsequent in-court identifications made by Albert and Randy at the preliminary hearing. The trial court denied the motion and Kaelin pled guilty to the burglary charge.[1]

On appeal, Kaelin renews his challenge to the showup identifications made by Albert and Randy. At the outset, we note that there is some confusion in the

---

[1] Pursuant to a plea agreement, the remaining two charges were dismissed.

record regarding the manner in which Albert and Randy identified Kaelin at the crime scene. Randy testified at the preliminary hearing that he identified Kaelin when police brought him back to the V.F.W. At the suppression hearing, however, Larson testified that he only showed Kaelin to Albert.[2] Randy did not testify at the suppression hearing. As a result, the State argues that Kaelin waived any objection to Randy's identification because he failed to challenge it at the suppression hearing.[3] We disagree.

It is clear from the record that Kaelin preserved for appeal the issue of the validity of both identifications. First, Kaelin's motion sought to suppress the identification made as a result of the showup or "other identification of the defendant." Second, the affidavit in support of the motion refers to the identification made by the "witnesses." Third, Kaelin's counsel moved to adjourn the suppression hearing for the express reason that the preliminary hearing transcript was not yet available and he wanted to use that testimony "to effectively cross examine and point out inconsistencies . . .

---

[2] Larson testified in relevant part as follows:

Q. And did you show [Kaelin] to [Albert] Miller?

A. Yes, I did.

. . . .

Q. Did you show him to anybody else?

A. No, I did not.

[3] The State also argues that Kaelin is precluded from challenging the identification at the preliminary hearing based on his subsequent guilty plea. *See State v. Webb*, 160 Wis. 2d 622, 628, 467 N.W.2d 108, 110, *cert. denied*, 502 U.S. 889 (1991). It is clear, however, that Kaelin claims no error with respect to the preliminary hearing.

at the preliminary hearing . . . with reference to the identification."

While we agree with Kaelin that he did not waive the right to challenge Randy's identification on appeal, we must also recognize that we are bound by the suppression hearing record as it comes to us. *See Fiumefreddo v. McLean*, 174 Wis. 2d 10, 26, 496 N.W.2d 226, 232 (Ct. App. 1993). To the extent that Kaelin failed to address the specific facts surrounding Randy's identification at the suppression hearing, we acknowledge that meaningful review is compromised.

We now turn to the validity of the showup procedure. A "showup" is a procedure whereby a lone suspect is presented by police to a witness or victim of a crime so that the witness or victim may identify the person as the perpetrator. *See State v. Marshall*, 92 Wis. 2d 101, 119, 284 N.W.2d 592, 600 (1979). Whether any pretrial identification violates due process depends on the totality of the circumstances surrounding the pretrial identification confrontation. *Stovall v. Denno*, 388 U.S. 293, 302 (1967).

We apply a two-part test when determining whether pretrial identification evidence is admissible. *See Marshall*, 92 Wis. 2d at 117, 284 N.W.2d at 599. First, we must decide whether the confrontation procedure was characterized by unnecessary suggestiveness. *Id.* If so, we must further decide whether the totality of the circumstances show that the identification was reliable despite the unnecessary suggestiveness. *Id.*

9

The defendant bears the initial burden of proving that the identification was unnecessarily suggestive. *State v. Wolverton*, 193 Wis. 2d 234, 264, 533 N.W.2d 167, 178 (1995). This burden is met if it can be shown that the identification procedure was so impermissibly suggestive as to give rise to a substantial likelihood of misidentification. *See Powell v. State*, 86 Wis. 2d 51, 61-62, 271 N.W.2d 610, 615 (1978). If this burden is met, the State has the burden to demonstrate that the identification was reliable even though the confrontation was suggestive. *Wolverton*, 193 Wis. 2d at 264, 533 N.W.2d at 178.

Because we need not inquire into the reliability of Albert's identification if Kaelin failed to meet this initial burden, *see Powell*, 86 Wis. 2d at 62, 271 N.W.2d at 615, we first address whether the showup used here was impermissibly suggestive. This is a constitutional question that we decide without deference to the trial court's determination. *See State v. Woods*, 117 Wis. 2d 701, 715, 345 N.W.2d 457, 465 (1984). We conclude that under the totality of the circumstances the showup was not impermissibly suggestive.

Kaelin concedes, as he must, that the showup procedure "is not, by such fact alone, rendered either suggestive or impermissible." *State v. Isham*, 70 Wis. 2d 718, 724-25, 235 N.W.2d 506, 509-10 (1975); *see also Wolverton*, 193 Wis. 2d at 265, 533 N.W.2d at 178 (holding that showups are not per se impermissibly suggestive). However, he contends that courts gener-

10

ally give greater scrutiny to a showup than a lineup,[4] and that the facts when viewed collectively within this strict scrutiny reveal that the procedure was impermissibly suggestive. Kaelin argues that the following specific facts indicate improper suggestiveness: (1) the police first showed him to the Millers while he was sitting in the back of a squad car; (2) the police took him out of the car and showed him wearing handcuffs; (3) the Millers identified him in front of each other; and (4) the police brought him to the scene within thirty minutes of the crime, implying that they believed Kaelin to be the perpetrator. We find these arguments unpersuasive; we will address each in turn.

Kaelin first contends that the fact that he was initially shown to Albert while in the back of a squad car and then standing while handcuffed renders the process highly suggestive because it gave the impression that he was considered a suspect and had just been arrested. For support, Kaelin cites several cases in which the showup was held to be highly suggestive. For example, Kaelin cites *LeBarron v. Burke*, 314 F. Supp. 657 (W.D. Wis. 1970), where the fact that the showup identification occurred at the police station when the defendant was in the company of a police officer was held to be unnecessarily suggestive.

We fully recognize that certain showups can be highly suggestive and have been widely condemned in some cases, such as those cited by Kaelin involving postarrest custodial showups performed at the police station in lieu of a lineup. However, as our supreme court has noted, a crime scene confrontation, proxi-

---

[4] *See, e.g., Rodriguez v. Young*, 708 F. Supp. 971, 978 (E.D. Wis. 1989), *aff'd*, 906 F.2d 1153 (7th Cir. 1990), *cert. denied*, 498 U.S. 1035 (1991).

mate in time and place to the commission of the crime, "promote[s] fairness, by assuring reliability" because the witness's or victim's memory is fresh.[5] *Isham*, 70 Wis. 2d at 724, 235 N.W.2d at 509-10 (quoted source omitted). Further, the showup may be a preferred procedure because if no identification is made, the suspect may be released and the police can continue their investigation. *Id.* at 725, 235 N.W.2d at 510.

We cannot conclude that the fact that Kaelin was initially shown in the back of the squad car or shown wearing handcuffs renders the showup unnecessarily unreasonable. A showup by its very nature suggests that the police believe they have caught the perpetrator. *See id.* at 725-26, 235 N.W.2d at 510-11. As our supreme court recently held:

> The mere fact that a suspect was sitting in a police car is insufficient to demonstrate that the showup was "so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." To hold otherwise would be tantamount to holding that all showups are impermissibly suggestive, which would run counter to our prior decisions stating that showups are not *per se* impermissibly suggestive.

*Wolverton*, 193 Wis. 2d at 265, 533 N.W.2d at 178 (quoted source and citation omitted).

---

[5] We also note that identifications based on showups have repeatedly been held to be constitutionally permissible by many courts when conducted in a fair manner promptly after a crime. *See* 1 WAYNE R. LAFAVE & JEROLD H. ISRAEL, CRIMINAL PROCEDURE § 7.4(f) (1984).

Regarding the use of handcuffs, we note that there is no evidence in the record to support Kaelin's assertion that he was shown wearing handcuffs or that the Millers saw the handcuffs.[6] Even if he was, we do not conclude that the use of handcuffs or other indicia of custody, absent other suggestive factors, renders a showup invalid where it is necessary for the prompt and orderly presentation of the suspect, consistent with the protection of the officers and witnesses. *See United States v. Kessler*, 692 F.2d 584, 586 (9th Cir. 1982). Here, Kaelin had previously displayed his willingness to flee from police, thereby providing ample justification for the handcuffs.

Kaelin next argues that Albert only described the burglar's gender, hair, jacket color and general physique, and could only identify Kaelin when his back was turned without seeing his face. The facts relied on by Kaelin in this argument are more properly directed toward whether Albert's identification was reliable. However, we need not address the reliability prong of the test if the showup procedure was not impermissibly suggestive. *Powell*, 86 Wis. 2d at 62, 271 N.W.2d at 615.

Kaelin also argues that the showup identifications at the crime scene were impermissibly suggestive because both Albert and Randy identified him in front

---

[6] We note here that our supreme court has previously held that the fact that a suspect is shown wearing handcuffs alone may not render the identification procedure impermissibly suggestive where the witness did not see the handcuffs. *State v. DiMaggio*, 49 Wis. 2d 565, 586-87, 182 N.W.2d 466, 478-79, *cert. denied*, 404 U.S. 838 (1971).

of each other. While we agree with Kaelin that such an argument might have force under certain circumstances, on the record before us it is purely speculative. The record simply does not indicate whether the Millers identified Kaelin in front of each other, and, as we noted at the outset, we cannot speculate as to what the facts might actually be.[7]

Last, Kaelin argues that the short amount of time which elapsed between the crime and when police brought Kaelin back to be identified made it obvious to the Millers that the suspect had just been picked up in the area and unfairly implied that the police believed Kaelin to be the perpetrator. This factor does not weigh in favor of suggestiveness. Rather, as we previously noted, the short time period makes the identification inherently *more* reliable. *Isham*, 70 Wis. 2d at 724, 235 N.W.2d at 509-10.

Based upon our review of the record before us, we see nothing that would indicate that the police encouraged the identification or did anything to increase the suggestiveness of the showup procedure. The showup occurred within thirty minutes after the burglary, while Albert's recollection was fresh. The police said nothing to Albert to suggest that the person to be viewed was the perpetrator or to encourage the

---

[7] Kaelin argues in his reply brief that Randy's testimony indicates that he identified Kaelin at the same time as Albert's identification. Randy testified that the police "brought the gentleman back in the one car, and I just identified him by the jacket and his hair." Considering this testimony in conjunction with Larson's testimony that Larson only showed Kaelin to Albert, an equally compelling inference from Randy's testimony is that the Millers did not simultaneously identify Kaelin.

identification. Accordingly, we conclude that Kaelin failed to carry his burden of proving that the showup procedure in this instance was impermissibly suggestive under the totality of the circumstances. Consequently, the trial court properly refused to suppress the identifications.

*By the Court.*—Judgment affirmed.