COURT OF APPEALS
DECISION
DATED AND FILED

July 12, 2022

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2021AP1100**

Cir. Ct. No. **2015CF1640**

**STATE OF WISCONSIN**

**IN COURT OF APPEALS
DISTRICT I**

---

STATE OF WISCONSIN,

       PLAINTIFF-RESPONDENT,

  V.

ALBERTO E. RIVERA,

       DEFENDANT-APPELLANT.

---

APPEAL from an order of the circuit court for Milwaukee County: JEFFREY A. WAGNER, Judge. *Affirmed.*

Before Brash, C.J., Donald, P.J., and Dugan, J.

¶1 BRASH, C.J. Alberto E. Rivera appeals the order denying his motion filed pursuant to WIS. STAT. § 974.06 (2019-20).[1] Rivera argues that his

---

[1] All references to the Wisconsin Statutes are to the 2019-20 version unless otherwise noted.

trial counsel was ineffective for failing to seek suppression of the in-court identification of Rivera by the State's primary witness, on the grounds that the identification was tainted by an earlier impermissibly suggestive "showup" procedure. He further alleges that his right to counsel was violated during the lineup since his retained counsel was not present, and argues that his trial counsel should have sought suppression of the in-court identification on that ground as well. Additionally, Rivera claims that his postconviction counsel was ineffective for failing to raise these issues in his direct appeal. Upon review, we affirm.

## BACKGROUND

¶2     In July 2017, Rivera was convicted of several criminal offenses, including first-degree intentional homicide for the shooting death of Henry Hodges, and attempted first-degree intentional homicide for the shooting of Hodges' girlfriend, B.J. Hodges had been shot in the head at close range, as well as in the left knee. B.J. had gunshot wounds to both of her wrists as well as a wound where a bullet had grazed her head.

¶3     The shootings occurred in April 2015 in West Allis. Responding police officers found Hodges dead at the scene, and B.J. was taken to the hospital for treatment of her injuries. In a statement to police, B.J. said that she and Hodges had driven to the apartment of a friend of Hodges' that she knew as Alberto. B.J. explained that Hodges had gone up to the apartment while she waited in the SUV. She stated that Alberto came down to the SUV ten to fifteen minutes later, pointed a gun with a laser sight at her head, and told her to move to the third row seat and keep her head down. Hodges was then brought down to the SUV; his hands and feet had been bound with electrical cords, and his mouth covered with duct tape.

2

¶4      B.J. stated that Alberto demanded money from Hodges, and that they drove to Hodges' residence to search for that money.  She said that Alberto then realized Hodges' keys were at Alberto's apartment, so they began to drive back to Alberto's apartment to get them.  After a short time, however, B.J. stated that the SUV stopped; she heard the vehicle door open, and then heard two shots.  She subsequently heard two more shots, and said that she "stayed still, playing dead" for approximately five minutes.  She then realized she was bleeding, so she exited the SUV and ran to a nearby apartment for help.

¶5      During the investigation into the shootings, a detective from the West Allis Police Department interviewed members of Hodges' family about whether they knew anyone named Alberto.  Hodges' nephew provided a Facebook picture of Alberto; he was identified there as Alberto Ortiz.  Hodges' nephew also told the detective where Alberto lived, which was the same apartment building that B.J. had identified as the building where she and Hodges had driven to meet Alberto on the night of the shootings.

¶6      Using the police department's databases, the detective determined that Alberto Ortiz was Rivera.  Another detective from the West Allis Police Department showed the Facebook picture to B.J., who stated with "100%" certainty that he was the person who had shot her and Hodges.

¶7      Initially, Rivera was charged in April 2015 with being a felon in possession of a firearm, as a repeater.  He was on parole at that time, and his parole officer informed him of the charge.  Rivera retained Attorney Robert LeBell to represent him, and Attorney LeBell made arrangements for Rivera to turn himself in.  However, Rivera "at the last minute" decided not to do so.  He was subsequently arrested in August 2015.

¶8    The police conducted an in-person lineup for B.J. to view. Rivera asserts that he informed the officers that he was represented by Attorney LeBell, and that he wanted Attorney LeBell present for the lineup. He claims the officers told him that he was being represented by "a woman whom [he] had never met"; the police report indicates that Rivera was represented during the lineup by Attorney Alexis Ray Liggins.[2] B.J. picked Rivera out of the lineup as the shooter.

¶9    Additional charges were subsequently filed against Rivera for first-degree intentional homicide and attempted first-degree intentional homicide, both with the use of a dangerous weapon, and armed robbery, all as a party to a crime and as a repeater. At the jury trial in July 2017, B.J. was the State's key witness, testifying as to the events of that night. B.J. identified Rivera in the courtroom as Alberto, the man who shot her and Hodges. She testified that she had previously accompanied Hodges to Rivera's apartment prior to the night of the shootings, and had seen Rivera "five or six times."[3]

¶10    After Rivera was convicted and sentenced, he pursued a direct appeal. He argued that the trial court had erred in admitting other-acts evidence relating to a previous criminal conviction, and that there was insufficient evidence to support the homicide and attempted homicide convictions. *See* *State v. Rivera*,

---

[2] We note that although Attorney LeBell was retained to represent Rivera on his initial charge of felon in possession of a firearm, Attorney LeBell withdrew his representation when Rivera was charged with the additional, more serious crimes, and Rivera ascertained that he was unable to afford Attorney LeBell's services. Rivera was ultimately represented at trial by Attorney Ann Bowe.

[3] At trial, Rivera testified in his own defense and admitted that he knew Hodges. Rivera stated that he and Hodges had been in prison together, and once they were both out, they had started selling drugs together. However, he denied shooting Hodges and B.J., stating that he and Hodges had a "great relationship."

No. 2018AP952-CR, unpublished slip op. ¶2 (WI App Apr. 30, 2019). We affirmed. *Id.*

¶11 Rivera then filed the WIS. STAT. § 974.06 motion underlying this appeal in November 2020. He argued that his trial counsel was ineffective for failing to seek suppression of B.J.'s identification of Rivera because it was initiated by a "showup" procedure, where she was shown only a single photograph of Rivera—the Facebook photo obtained from Hodges' nephew. Rivera asserted that this procedure was impermissibly suggestive and thus unreliable, and tainted B.J.'s subsequent in-court identification of Rivera. Rivera also argued that his trial counsel should have sought suppression of B.J.'s lineup identification because his right to counsel was violated when he was not permitted to have his retained counsel, Attorney LeBell, present during the lineup.

¶12 Rivera further contended that his motion was not procedurally barred because his postconviction counsel failed to raise these issues during his direct appeal, and these current claims are "clearly stronger" than those that were raised in that appeal. *See State v. Romero-Georgana*, 2014 WI 83, ¶4, 360 Wis. 2d 522, 849 N.W.2d 668. The trial court disagreed, concluding that Rivera had not set forth viable claims against his trial counsel, and therefore his claims were not clearly stronger than those raised in his direct appeal. As a result, the court denied Rivera's motion without a hearing. This appeal follows.

## DISCUSSION

¶13 Once the right to a direct appeal has been exhausted, WIS. STAT. § 974.06 is the mechanism for a defendant to bring constitutional claims. *See State v. Henley*, 2010 WI 97, ¶52, 328 Wis. 2d 544, 787 N.W.2d 350. In a motion brought under § 974.06, however, a defendant must demonstrate that there is a

"sufficient reason" that the claims in that motion were not raised in a prior motion or direct appeal. *State v. Escalona-Naranjo*, 185 Wis. 2d 168, 185-86, 517 N.W.2d 157 (1994). This rule "promotes finality and efficiency by requiring defendants to bring all available claims in a single proceeding unless there exists a sufficient reason for not raising some claims in that initial proceeding." *Romero-Georgana*, 360 Wis. 2d 522, ¶33. "Whether a WIS. STAT. § 974.06 motion alleges a sufficient reason for failing to bring available claims earlier is a question of law" that we review *de novo*. *Romero-Georgana*, 360 Wis. 2d 522, ¶30.

¶14 "In some instances, ineffective assistance of postconviction counsel may be a sufficient reason for failing to raise an available claim in an earlier motion or on direct appeal." *Id.*, ¶36. Specifically, when a defendant alleges in a WIS. STAT. § 974.06 motion that his postconviction counsel was ineffective for failing to bring certain viable claims, that defendant "must demonstrate that the claims he wishes to bring are clearly stronger than the claims postconviction counsel actually brought." *Romero-Georgana*, 360 Wis. 2d 522, ¶4. However, to prove that postconviction counsel was ineffective for failing to bring ineffective assistance of trial counsel claims, the defendant must prove that trial counsel did indeed provide ineffective assistance. *State v. Ziebart*, 2003 WI App 258, ¶15, 268 Wis. 2d 468, 673 N.W.2d 369.

¶15 Thus, we review whether Rivera's trial counsel was ineffective for failing to seek suppression of B.J.'s in-court identification. To prove ineffective assistance of counsel, a defendant must show both that counsel's performance was deficient and that the deficiency prejudiced his defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). The defendant "must prevail on both parts of the test to be afforded relief." *State v. Allen*, 2004 WI 106, ¶26, 274 Wis. 2d 568, 682 N.W.2d 433. Whether the facts satisfy the deficiency and prejudice components are

questions of law that we review *de novo*. ***State v. Nielsen***, 2001 WI App 192, ¶14, 247 Wis. 2d 466, 634 N.W.2d 325. However, "[a] court need not address both components of this inquiry if the defendant does not make a sufficient showing on one." ***State v. Smith***, 2003 WI App 234, ¶15, 268 Wis. 2d 138, 671 N.W.2d 854.

¶16 A claim of ineffective assistance of counsel requires that a postconviction evidentiary hearing be held "to preserve the testimony of trial counsel." ***State v. Machner***, 92 Wis. 2d 797, 804, 285 N.W.2d 905 (Ct. App. 1979). However, a defendant is not automatically entitled to an evidentiary hearing relating to his or her postconviction motion. ***State v. Bentley***, 201 Wis. 2d 303, 309-10, 548 N.W.2d 50 (1996). Rather, the trial court is required to hold an evidentiary hearing only if the defendant has alleged "sufficient material facts that, if true, would entitle the defendant to relief." ***Allen***, 274 Wis. 2d 568, ¶14. This is a question of law that we review *de novo*. ***Id.***, ¶9.

¶17 If, on the other hand, the postconviction motion "does not raise facts sufficient to entitle the movant to relief, or presents only conclusory allegations, or if the record conclusively demonstrates that the defendant is not entitled to relief," the trial court, in its discretion, may either grant or deny a hearing. ***Id.*** We review such a discretionary decision under the deferential erroneous exercise of discretion standard. ***Id.***

*Showup Identification Procedure*

¶18 We begin our analysis of Rivera's ineffective assistance claims with his contention that the showup procedure utilized by police in showing B.J. the Facebook picture was impermissibly suggestive and therefore unreliable. A "showup" is "a procedure whereby a lone suspect is presented by police to a witness or victim of a crime so that the witness or victim may identify the person as the

perpetrator." *See State v. Kaelin*, 196 Wis. 2d 1, 9, 538 N.W.2d 538 (Ct. App. 1995). A challenge to a showup implicates the right of due process, which presents a constitutional question that this court reviews *de novo*. *Id.* at 9-10.

¶19 The law in Wisconsin regarding showups has shifted in recent years. At the time of Rivera's trial, the standard for showups was controlled by *State v. Dubose*, 2005 WI 126, 285 Wis. 2d 143, 699 N.W.2d 582, *abrogated by State v. Roberson*, 2019 WI 102, ¶3, 389 Wis. 2d 190, 935 N.W.2d 813. Prior to *Dubose*, determinations of whether pretrial identification evidence was admissible employed a two-part test. *See Kaelin*, 196 Wis. 2d at 9. The court would first decide "whether the confrontation procedure was characterized by unnecessary suggestiveness." *Id.* If that was determined to be the case, the court then had to "decide whether the totality of the circumstances show that the identification was reliable despite the unnecessary suggestiveness." *Id.*

¶20 The *Dubose* court, however, citing studies that deemed eyewitness testimony to be "hopelessly unreliable," concluded that "evidence obtained from an out-of-court showup is inherently suggestive[.]" *Dubose*, 285 Wis. 2d 143, ¶¶30, 33 (citation omitted). It thus held that evidence obtained from a showup "will not be admissible unless, based on the totality of the circumstances, the showup was necessary." *Id.*, ¶2. The court further explained that "[a] showup will not be necessary … unless the police lacked probable cause to make an arrest or, as a result of other exigent circumstances, could not have conducted a lineup or photo array." *Id.*

¶21 However, the extent of the application of *Dubose* was unsettled at the time of Rivera's trial, specifically with regard to whether the constraints of *Dubose* on showup identifications applied to photo identification, as opposed to a live

single-person lineup. *See id.*, ¶¶10, 37 (where the court stated that there were "two showups"—a robbery victim was shown a suspect who had been placed in the back of a squad car, and again when the suspect was alone in an interrogation room—and distinguished those from the victim being shown a mugshot of the suspect); *see also* ***State v. Ziegler***, 2012 WI 73, ¶78 n.13, 342 Wis. 2d 256, 816 N.W.2d 238 (where the court noted the definition of a "showup" was "a one-on-one *confrontation*" (emphasis added; citation omitted)).

¶22 Furthermore, as previously noted, our supreme court subsequently overturned ***Dubose*** in ***Roberson***, returning to the previous two-step procedure for reviewing showups which considers the reliability of the evidence. ***Id.***, 389 Wis. 2d 190, ¶¶81-82. Indeed, the court specifically stated in ***Roberson*** that showups are "not per se impermissibly suggestive." ***Id.***, ¶32 (citation omitted).

¶23 The trial court here applied the showup standard set forth in ***Roberson*** in its review of Rivera's WIS. STAT. § 974.06 motion.[4] Rivera contends that this analysis was in error, and that the standard in ***Dubose*** should have been applied because that was the law in effect at the time of Rivera's trial. In fact, the ***Roberson*** decision was not released until December 3, 2019, more than seven months after Rivera's direct appeal was decided by this court on April 30, 2019. *See* ***Rivera***, No. 2018AP952-CR.

---

[4] Specifically, the trial court adopted the State's response brief, which applied the showup standard set forth in ***State v. Roberson***, 2019 WI 102, 389 Wis. 2d 190, 935 N.W.2d 813. Rivera asserts that in adopting the State's brief, the trial court failed to address certain aspects of his arguments. In previously addressing the issue of adopting a party's brief in a decision, this court observed that this practice is "inappropriate" because "judges must not only make their independent analyses of issues presented to them for decision, but should also explain *their* rationale to the parties and to the public." ***State v. McDermott***, 2012 WI App 14, ¶9 n.2, 339 Wis. 2d 316, 810 N.W.2d 237. However, we also stated that in a case where our review is *de novo*, the trial court's "failure to give *its* reasons (rather than adopt the State's brief *in haec verba*) is of no consequence[.]" ***Id.*** Such is the case here.

¶24 Rivera provides no support for his contention. However, we note that "a new rule of criminal procedure generally cannot be applied retroactively to cases that were final before the rule's issuance[.]" *State v. Lagundoye*, 2004 WI 4, ¶13, 268 Wis. 2d 77, 674 N.W.2d 526. To that end, a case is final "if the prosecution is no longer pending, a judgment or conviction has been entered, the right to a state court appeal from a final judgment has been exhausted, and time for certiorari review in the United States Supreme Court has expired." *Id.*, ¶20.

¶25 Rivera's petition for review by our supreme court was denied on August 14, 2019, and a petition for a writ of certiorari by the United States Supreme Court would likely have been due ninety days after that—in mid-November 2019.[5] *See* SUP. CT. R. 13. Presumably, Rivera's case was thus final at the time *Roberson* was released, and therefore the "new" rule set forth therein cannot be retroactively applied to Rivera's case. *See Lagundoye*, 268 Wis. 2d 77, ¶20. In other words, *Dubose* is controlling here.

¶26 Returning to Rivera's ineffective assistance claim, "[w]hen case law can be reasonably analyzed in two different ways, then the law is not settled." *State v. Jackson*, 2011 WI App 63, ¶10, 333 Wis. 2d 665, 799 N.W.2d 461. Furthermore, "[w]hen the law is unsettled, the failure to raise an issue is objectively reasonable and therefore not deficient performance." *Id.* Accordingly, because the *Dubose* standard is controlling here but its application was unsettled law as to photo identifications, as discussed above, Rivera cannot prevail on his claim that his trial

---

[5] This information was obtained from the SCCA Case Management application utilized by the Wisconsin Supreme Court and Court of Appeals, containing file information entered by court staff. We take judicial notice of this information pursuant to WIS. STAT. § 902.01(2)(b).

counsel was ineffective for failing to bring a motion to suppress B.J.'s identification of Rivera.[6]

¶27  Additionally, we note the State's argument that if Rivera was granted a new trial on the grounds set forth in his motion, the test in ***Roberson*** would apply, so the outcome would be the same.  However, the grant of a new trial here would be the result of a conclusion that B.J.'s identification of Rivera should have been suppressed; thus, there would be no need to apply ***Roberson*** at a new trial.

¶28  Nevertheless, we believe that the ***Roberson*** test is instructive in demonstrating why the showup with the Facebook pictures of Rivera was not impermissibly suggestive.  The ***Roberson*** court unequivocally stated that the "constitutional scrutiny" which may be applied to a showup is applicable when that showup consisted of a single Facebook photo.  ***Id.***, 389 Wis. 2d 190, ¶48.  However, the court recognized that due process concerns relating to identification are not triggered unless the reliability of that evidence is called into question.  *See **id.***, ¶29; ***Perry v. New Hampshire***, 565 U.S. 228, 248 (2012).  Thus, a "screening for reliability" is required only if a court concludes that the defendant has met the initial burden of demonstrating impermissible suggestiveness; otherwise, "reliability of admissible evidence is for the jury to determine in the first instance."  ***Roberson***, 389 Wis. 2d 190, ¶27.

¶29  In applying the two-part test our supreme court reinstated in ***Roberson***, the defendant "'bears the initial burden of demonstrating that a showup

---

[6] Furthermore, even if ***State v. Dubose***, 2005 WI 126, 285 Wis. 2d 143, 699 N.W.2d 582, *abrogated by **Roberson***, 389 Wis. 2d 190, ¶3, could be applied in this case, B.J.'s identification of the photo likely provided the probable cause required to initially issue the arrest warrant for Rivera. As such, showing B.J. the photo would have been deemed necessary, thus satisfying the necessity test of ***Dubose***.  *See **id.***, 285 Wis. 2d 143, ¶2.

was impermissibly suggestive.'" *Id.*, ¶4 (citation omitted). The burden only shifts to the State to prove that "under the 'totality of the circumstances' the identification was reliable even though the confrontation procedure was suggestive" if the defendant meets that initial burden. *Id.* (citations omitted).

¶30 To meet this initial burden, the defendant must "show that the method law enforcement chose to employ to identify a suspect as the perpetrator was 'an unnecessarily suggestive identification procedure,' such that there was a very substantial likelihood of misidentification." *See id.*, ¶27 (citation omitted). In this case, the record indicates that B.J. told police—as she was being transported to the hospital after the shooting—that she knew the person with the gun who had gotten into the SUV as Alberto, because she had seen him on several prior occasions when he had met with Hodges. She also provided a physical description of Alberto at that time. Furthermore, the Facebook photograph of Rivera shown to B.J. was provided by Hodges' nephew, who had met Rivera through Hodges. Moreover, Hodges' nephew told police that Rivera lived in the same apartment building that had been identified by B.J. as Alberto's building.

¶31 Rivera asserts that showing B.J. the photo labeled with the name "Alberto" renders it unnecessarily suggestive. However, the detective who showed B.J. the photograph testified that he displayed it in a manner so that she could not see the name. Furthermore, although B.J. testified that she could not remember if

she had seen the name on the photo, she stated that she had made the identification based on the face depicted in the photo.[7]

¶32    Based on these facts, we conclude that Rivera would not be able to meet the initial burden under *Roberson* of demonstrating that the showup was impermissibly suggestive. *See id.* The picture of Rivera was obtained after police received a partial identification of the shooter from B.J., who also provided additional information about the location of Rivera's apartment which was corroborated by Hodges' nephew. As such, there was little chance of misidentification by showing the Facebook picture to B.J. *See id.* Furthermore, as Rivera would not meet his initial burden, there is no need to discuss the second step of the process set forth in *Roberson* for determining the reliability of the identification.[8] *See id.*, ¶4.

¶33    In short, Rivera's ineffective assistance of counsel claim fails regardless of which standard—*Dubose* or *Roberson*—is applied. Thus, Rivera's trial counsel cannot be deemed to have been ineffective for failing to seek suppression of B.J.'s identification of Rivera based on the showup procedure involving the Facebook photo, because any such motion would have failed. *See State v. Berggren*, 2009 WI App 82, ¶21, 320 Wis. 2d 209, 769 N.W.2d 110 (counsel is not ineffective for failing to bring a motion that would have been denied).

---

[7] In Rivera's brief, as part of the argument he presents on this issue, he states that the "police asked B.J. if the picture was the man she knew as Berto," referencing the transcript of B.J.'s testimony. However, we find nothing in B.J.'s testimony that supports this contention. Moreover, the detective who presented the photograph to B.J. testified that he simply asked her whether she recognized the person in the photograph. We caution counsel to maintain accuracy in the facts he presents in his briefs.

[8] This discussion would include analyzing the various factors relating to reliability, as described in *Neil v. Biggers*, 409 U.S. 188, 199-200 (1972), and *United States v. Wade*, 388 U.S. 218, 241 (1967). However, as stated above, there is no reason to engage in such a discussion here.

Therefore, Rivera is not entitled to an evidentiary hearing on this claim. *See Allen*, 274 Wis. 2d 568, ¶9.

*Right to Counsel During Lineup*

¶34    We next turn to Rivera's claim that his right to counsel was violated during the lineup since his retained counsel was not present. He argues that his trial counsel was ineffective for failing to seek suppression of B.J.'s in-court identification of Rivera on that ground as well.

¶35    A defendant is entitled to the presence of counsel during a lineup when a case has "progressed from the investigatory to the accusatory stage[.]" *State v. Beals*, 52 Wis. 2d 599, 607, 191 N.W.2d 221 (1971). The primary purpose of counsel during a lineup "is that of observer":

> A police lineup is not a magisterial or judicial hearing at which a record is made and objections to procedures can be entered. The lawyer is present as eyes and ears for the accused, not as interrogator or cross-examiner. It is [counsel's] presence, not his [or her] participation, that is relied upon to prevent unfairness and lessen the hazards of eyewitness identification at the lineup itself.

*Wright v. State*, 46 Wis. 2d 75, 84, 175 N.W.2d 646 (1970).

¶36    It is not disputed that Rivera was represented during the lineup; rather, Rivera's argument is that the counsel he had retained was not present. In contrast, the State argues that, based on this role as an observer, substitute counsel at the lineup was adequate for purposes of satisfying the right to counsel. *See United States v. Wade*, 388 U.S. 218, 237 n.27 (1967) ("Although the right to counsel usually means a right to the suspect's own counsel, provision for substitute counsel may be justified on the ground that the substitute counsel's presence may eliminate

the hazards which render the lineup a critical stage for the presence of the suspect's own counsel.").

¶37 Furthermore, at the time of the lineup, the only charge that had been filed against Rivera was for being a felon in possession of a firearm, for which he had retained Attorney LeBell. The other, more serious charges against him—including first-degree intentional homicide, attempted first-degree intentional homicide, and armed robbery—were not filed until approximately a week after the lineup was conducted.

¶38 The Sixth Amendment right to counsel is "offense specific[.]" *McNeil v. Wisconsin*, 501 U.S. 171, 175 (1991). In other words, "[i]t cannot be invoked once for all future prosecutions, for it does not attach until a prosecution is commenced, that is, 'at or after the initiation of adversary judicial criminal proceedings—whether by way of formal charge, preliminary hearing, indictment, information, or arraignment.'" *Id.* (citations and one set of quotation marks omitted). Thus, even assuming for the sake of argument that Rivera was entitled to have Attorney LeBell present for the lineup, this right would have only attached to the felon in possession of a firearm charge. *See id.*

¶39 In the context of Rivera's ineffective assistance claim, then, Rivera must demonstrate that the alleged deficiency of trial counsel in failing to raise this issue was prejudicial to Rivera. *See Strickland*, 466 U.S. at 687. To prove prejudice, the defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. A reasonable probability is "a probability sufficient to undermine confidence in the outcome." *Id.*

¶40 For the felon in possession charge, given the stipulation of Rivera's previous felony conviction, the State was required to prove only that he possessed a firearm. *See* WIS. STAT. § 941.29 (2015-16);[9] *see also* WIS JI—CRIMINAL 1343. Because the jury convicted him of first-degree intentional homicide and first-degree attempted homicide for the shootings of Hodges and B.J., there is not a reasonable probability of a different outcome relating to his conviction for being a felon in possession of a firearm. *See Strickland*, 466 U.S. at 694. Therefore, Rivera's claim fails, and he is thus not entitled to an evidentiary hearing on this claim. *See Allen*, 274 Wis. 2d 568, ¶9.

¶41 Moreover, because both of Rivera's ineffective assistance of counsel claims fail, his claim of ineffective assistance of postconviction counsel also fails. *See Ziebart*, 268 Wis. 2d 468, ¶15. Therefore, he has not demonstrated that these claims are clearly stronger than the claims his postconviction counsel brought in his direct appeal. *See Romero-Georgana*, 360 Wis. 2d 522, ¶4. As a result, he is barred from obtaining relief by way of a WIS. STAT. § 974.06 motion. *See Escalona-Naranjo*, 185 Wis. 2d at 185-86. Accordingly, we affirm the trial court's denial of Rivera's § 974.06 motion.

*By the Court.*—Order affirmed.

Not recommended for publication in the official reports.

---

[9] We note that Rivera's charging documents and judgment of conviction reference subsection (2) of WIS. STAT. § 941.29 for the felon in possession of a firearm charge; however, subsection (2) of § 941.29 was repealed under 2015 Wis. Act 109, § 8, and other subsections were renumbered and modified. The Act took effect November 13, 2015.