SHAPIRO and another, Appellants, vs. KLINKER and others, Respondents.*

*October 5—November 8, 1950.*

---

* Motion for rehearing denied, with $25 costs, on January 9, 1951.

For the appellants there was a brief by *Schubring, Ryan, Petersen & Sutherland* of Madison, and oral argument by *R. J. Sutherland*.

For the respondents there was a brief by *Curran & Curran* of Mauston, for Keith A. Klinker, and *Aberg, Bell, Blake & Conrad* of Madison, for the Minnesota Farmers Mutual Casualty Insurance Company, and oral argument by *Charles P. Curran, W. J. P. Aberg,* and *Carroll E. Metzner* of Madison.

BROADFOOT, J. The collision occurred at about 12:10 a.m. on November 5, 1948, within the city limits of the city of Mauston. Wesley, the driver of the tractor and trailer, had entered the easterly limits of the city and was proceeding in a westerly direction upon State Trunk Highway 12. The defendant Klinker was driving his automobile in an easterly direction upon said highway. It had been raining and there

was a slight mist at the time of the collision. The accident happened upon a curve. Immediately following the collision each vehicle was partially over the center line of the highway, which consisted of a twenty-foot slab of concrete with a black center line and with wide gravel shoulders on each side.

The defendant Klinker testified that on November 4, 1948, he drove to New Lisbon to attend a meeting of a veterans' organization. He drove a maroon-colored, 1946 model, two-door V8 Ford car. He consumed two bottles of beer before attending the meeting at 8 p.m. After the meeting he consumed four bottles of beer. He then planned to drive to Joe's Night Club, which was located east of Mauston. He drove upon State Trunk Highway 12 from Highway 80 in New Lisbon, making a right turn and proceeding in the direction of Mauston. He testified that he drove upon his own side of the highway and was upon his own side of the highway when he first noticed the tractor-trailer about one hundred feet away. He could remember little of what happened after seeing the truck.

The driver Wesley testified that he first saw the Klinker car some distance to his west and it was passing another automobile. He again observed it when it was three to four hundred feet from the point of collision. He testified that from that time on Klinker's car veered from one side of the road to the other and, when a short distance from him, was on the northerly side of the highway, which would be the wrong side of the road for Klinker to travel upon. Wesley's testimony was corroborated to some extent by the testimony of the witness, Hilligoss.

Upon this appeal the plaintiffs contended, among other things, that the trial court wrongfully excluded the evidence of one Dahlberg relative to Klinker's manner of driving prior to the collision. The witness, Dahlberg, was called by the plaintiffs. Objection was made to several questions asked the witness and the objections were sustained by the trial judge.

The jury was excused and by way of offer of proof the witness testified that at about midnight on November 4, 1948, he was driving a truck through the city of New Lisbon in the direction of Mauston on State Trunk Highway 12; that a car entered the highway from an intersecting road without stopping for the arterial stop sign, turned to the right ahead of the witness, and proceeded in the same direction; that the witness drove behind said car for a distance of about a mile and a half when the car disappeared around a curve in the road; that during that period he could plainly see the course it followed and it veered from one side of the highway to the other to the extent that it went off upon the shoulder on both sides of the highway several times. He testified as to the make, model, and color of the car and stated it was the same car that was involved in the collision. The distance between New Lisbon and Mauston, according to the record, is seven or eight miles. The witness further testified that he did not recollect any other car passing him between New Lisbon and Mauston. He was the first driver to reach the scene of the accident following the collision. Later upon being asked if it was the same car he stated that he believed it was. He was also asked if his identification of the car was based on his recollection that no other car passed him and he answered, "That would be part of it, too." The testimony was offered to prove the sobriety or lack of sobriety of the defendant Klinker.

Dahlberg's testimony was objected to upon the ground that it was irrelevant and that it was too remote. His statements referred to matters that happened five or six miles in distance and fifteen or twenty minutes in time prior to the collision.

"In determining a dispute concerning the relevancy of proffered evidence, the question to be resolved is as to whether there is a logical or rational connection between the fact which is sought to be proved and a matter of fact which has been made an issue in the case. . . .

"While remoteness in point of time does not necessarily render evidence irrelevant, it may do so where the elapsed time is so great as to negative all rational or logical connection between the fact sought to be proved and the remote evidence offered in proof thereof." 1 Jones, Evidence (4th ed.), pp. 238, 239, sec. 137.

In view of the other evidence in the case it cannot be said that there was no logical or rational connection between the facts sought to be proved and the fact which had been made an issue in the case, that is, the sobriety or lack of sobriety of the defendant Klinker. In the case of *Hefele v. Rotter,* 197 Wis. 300, 222 N. W. 220, two persons riding in a car that was going in the same direction as the defendant were permitted to testify as to the manner in which the defendant drove his car when he was four or five miles from the place of collision and again when he was about one-half mile from that point. They testified that the defendant seemed to be sleeping or nodding and that his car was proceeding in a zigzag path. They were also permitted to estimate the speeds at which the defendant's car was going. This court held that the reception of the evidence was not error, and in connection therewith made the following statement (p. 302) :

"The drowsiness that would cause defendant to permit his car to pursue an uncertain course along the road was a condition that was much more apt to continue to the point of accident than is the speed at which the car was driven four or five miles, or even half a mile, from the point of collision."

The testimony of Dahlberg should have been admitted. The weight to be given to the testimony was a matter for the jury. Our determination upon this point requires a new trial, and makes it unnecessary to decide the other questions raised by the appellants.

*By the Court.*—Judgment reversed and cause remanded for a new trial.