STATE of Wisconsin, Plaintiff-Respondent,

v.

Andrew James GARNER, Defendant-Appellant. †

Court of Appeals

*No. 96–0168–CR. Submitted on briefs October 1, 1996.—Decided December 17, 1996.*

(Also reported in 558 N.W.2d 916.)

†Petition to review denied.

For the defendant-appellant the cause was submitted on the briefs of *Eileen A. Hirsch*, assistant state public defender.

For the plaintiff-respondent the cause was submitted on the briefs of *James E. Doyle, attorney general*, and *James M. Freimuth, assistant attorney general*.

Before Wedemeyer, P.J., Schudson and Curley, JJ.

SCHUDSON, J. Andrew James Garner appeals from the judgment of conviction, following his guilty plea, for burglary and possession of burglarious tools, and from the trial court's order denying his postconviction motion. He argues that the trial court violated his right to due process of law by denying his motion to suppress identification "without holding a hearing, taking evidence, or developing any factual basis for that denial."

As the parties acknowledge, this appeal presents two related issues of first impression: (1) whether an evidentiary hearing is always required when a defendant moves to suppress identification; and (2) if not always required, whether an evidentiary hearing on an identification motion may be denied when counsel fails to forecast a factual scenario or legal theory on which the defendant could prevail. We conclude that the trial court, in considering defense counsel's presentation of Garner's factual allegations and counsel's theory challenging the identification, correctly determined that Garner offered no factual scenario or legal theory that could prevail and, therefore, properly denied an evidentiary hearing. Accordingly, we affirm.

## I. BACKGROUND

The facts relevant to resolution of this appeal are undisputed. According to the criminal complaint, Karen Burris lived in a twelve-unit apartment building where she was the caretaker. As a result of burglaries in the locked storage bins of the basement, she convinced the building owner to install a baby monitor with the transmitter in the basement and the receiver in her first floor apartment.

On the night of January 31, 1995, Burris heard noises from the monitor. She went to the basement to investigate and saw a man carrying property, including some fishing poles from her own storage bin. Burris returned to her apartment, called 911 and, while on the phone with the 911 operator, looked out her door and saw the man still holding the property. Burris said the man stared at her while she described him to the operator, and then calmly walked out of the building.[1]

The complaint further alleged that a police officer dispatched to the burglary found Garner walking away from the apartment building carrying property including a bag with fishing poles.[2] The police searched Garner and found a hammer in his waistband, a steel pick-type tool and flashlight in his pockets, and a butter knife up his sleeve. Within a few minutes police brought Burris about two blocks from her building to a location where they were holding Garner and the property. Burris identified her fishing poles and also identified Garner as the burglar.

---

[1] At the preliminary hearing, Burris testified:

> The suspect came up the back stairs and stood in front of the doorway to exit the building, and he turned around and looked at me [ ] very calmly.
>
> The police officer [dispatcher on the phone] asked me, can you describe him, and I said, yes, he's standing there looking at me, so I described him, and then I said, well, now he's walking out the building towards Oakland Avenue, and at that point he motioned me as though it's okay, because I live upstairs, and then he just calmly walked off.

[2] At the preliminary hearing, Officer Brian O'Keefe testified that he first observed Garner on the block one block north of the apartment building, forty-five seconds after hearing the radio dispatch reporting the entry in progress and describing the suspect.

Garner moved to suppress identification and to exclude all derivative evidence. His motion "specifically requests a hearing before the trial" and further asserts:

1. At about 10:00 p.m. on the evening of January 31, 1995, the Shorewood Police Department dispatched Police Officer Brian O'Keefe to the area of North Oakland Avenue and East Newton Avenue to look for a black male suspected of burglary. Officer O'Keefe stopped Mr. Garner in the 3800 block of North Oakland Avenue. He placed the defendant, Andrew Garner into custody by placing hand cuffs on him.

2. While Mr. Garner stood handcuffed on the sidewalk he was exclusively in the presence of Police Officers Brian O'Keefe and Bart Engelking. These Officers detained Mr. Garner while a citizen witness, Karen Burris, was transported by Police Officer Mark Meyers to view him.

3. When Officer Meyers arrived, Mr. Garner was facing South toward Officer Engelking and away from Meyers' squad. Officer Meyers directed Officer Engelking to turn Mr. Garner to face his squad car. Officer Meyers focused his spot light on Mr. Garner to keep him from seeing Karen Burris. Karen Burris positively identified Mr. Garner.

4. The identification of the defendant by Karen Burris should be suppressed because it consisted of the viewing under poor lighting conditions of one individual standing handcuffed on the sidewalk, among police officers, by a witness sitting in a squad car on the street 20 to 36.5 feet away, which is an unduly suggestive and unreliable identification. In addition, the in court identification by Karen Burris at the Preliminary Hearing should be excluded from

525

evidence because it was substantially tainted by the above described investigation and identification.

In support of Garner's motion, defense counsel's brief to the trial court summarized the arrest and, citing the preliminary hearing transcript, stated:

> At a preliminary hearing held on February 14, 1995, defendant's attorney asked witnesses a number of questions about the identification which took place on January 31, 1995. Objections to questions about the witness's physical location, lighting conditions, and the description given to police, were sustained. In making the ruling about the description given to police, the court commented:
>
>> This is not a motion hearing. Should the case be bound over, should you find it necessary to bring a motion on the identification, certainly this line of questioning would be appropriate, but this is not the time to do that.[3]

The brief reiterated the factual allegations of the motion and then further alleged:

> At the April 3, 1995, pretrial hearing, defense counsel added, in response to the court's question, that she also intended to prove at the hearing:
>
>> a. That the witness's description of the suspect was "a minimal description, basically a black male, 5'8, 5'7. There is

---

[3] Garner does not allege any judicial effort to mislead him; the preliminary hearing was before a judicial court commissioner, not the trial judge who denied his suppression motion and his postconviction motion.

some testimony perhaps of a dark jacket, maybe even a hat."

 b. That a police officer will testify that they stopped someone else bearing the exact description of the person described by the witness within that period of time and exact location.

 c. That the witness made the identification in question "in a matter of seconds."

Finally, defense counsel asked the court to listen to the 911 tape description of the suspect, or to read her transcript of that tape. The court declined.

After brief oral arguments at the pretrial conference, the trial court denied Garner's motion concluding that it was "insufficient to warrant a hearing." The court explained that a hearing is "not supposed to be a discovery tool" and that, even assuming the truth of Garner's factual allegations, they were insufficient to warrant suppression. The trial court also noted that "[i]f something emerges at trial that defendant is aware of for the first time and that provides the basis for a hearing, a hearing can be had at any point in the proceedings."

## II. TRIAL COURT DECISION

Denying Garner's postconviction motion, the trial court provided a particularly insightful written decision that included an analysis consistent with our own. The trial court first considered "[w]hat factual showing, if any, is necessary in order to warrant an evidentiary hearing on a pretrial motion to suppress

identification evidence[.]" Citing § 971.30(2)(c), STATS.,[4] the trial court explained:

> [C]ommon sense suggests a requirement that facts be alleged which justify the relief requested. Such a rule allows the trial court to avoid unnecessary evidentiary hearings. There may be no facts in dispute, or the facts alleged may be insufficient to warrant any relief. If the moving party is not able to make sufficient good faith allegations of fact, then the evidentiary hearing becomes a discovery device rather than a means of resolving contested issues of fact. Secondly, such factual allegations allow both parties to properly and reasonably prepare for a hearing. A challenge to [a] particular arrest, search or identification might be based on any of a multitude of factual and legal theories. Only when the moving party states the facts which support the claim can the parties identify the legal and factual issues and determine which witnesses, if any, are needed for a hearing.

Invoking the standards of *Nelson v. State*, 54 Wis. 2d 489, 195 N.W.2d 629 (1975), the trial court concluded, "Perfunctory allegations are insufficient to warrant a hearing[;] the moving party must allege specific facts, by affidavit, reference to the record, or other offer of proof, which warrant the relief sought."

The trial court next addressed whether a defendant has "the right to a hearing in order to discover possible evidence to support his motion[.]" The trial court offered helpful analysis:

---

[4] Section 971.30(2)(c), STATS., requires that motions "[s]tate with particularity the grounds for the motion and the order or relief sought."

[D]efendant also asserts a right to an evidentiary hearing in order to "develop the facts" and to learn about evidence "in the control of the prosecution." It is not clear whether defendant asserts this as a right which accompanies all motions to suppress identification evidence, or whether there is something about the facts of this case that make such discovery appropriate. Defendant does not allege that the complaining witness or any officer refused to be interviewed or was unavailable for an interview, although there is no support for the proposition that such a refusal would entitle the defendant to a "discovery" hearing. It is true that a defendant typically will not know if a police officer whispered "We're sure it's him," or "this guy raped three other women in this neighborhood," but if there is to be a right to rummage around for such evidence, it should belong equally to all defendants, not just one who alleges that he was handcuffed or that the lighting was bad. Thus, defendant's argument amounts to a claim that, whenever police use a pretrial identification procedure, there is an absolute right to a pretrial hearing in order to explore the details of that procedure.

While such a procedure might help avoid an occasional interruption during a trial, this advantage is far outweighed by the need to avoid numerous unnecessary and time-wasting pretrial hearings. As with any suppression motion, if new facts emerge later on, a suppression hearing can then be held and relief granted when appropriate.

The trial court then determined whether Garner's motion was sufficient to warrant an evidentiary hearing and concluded that under well-settled case law, factual allegations such as Garner's were directed

at the witness's credibility and the identification's weight, not its admissibility.

> . . . .Of course, any show-up is necessarily suggestive in that it will be clear to the witness that the police have some reason to suspect the person in custody. The fact that a defendant is in handcuffs does not materially add to the inherent suggestiveness of the show-up, and the use of handcuffs does not create an impermissible degree of suggestion. . . . Defendant's intimations that the defendant was too far away or the spotlight not bright enough are purely speculative, and go more to the issue of reliability than to the threshold issue of suggestiveness.
>
> Defendant also cites the minimal description given by the witness to the police. This might have some bearing on the reliability of the identification, but it is difficult to see how this affects the suggestiveness of a show-up.

We now consider: (1) whether a trial court must hold an evidentiary hearing whenever a defendant moves to suppress identification; (2) if an evidentiary hearing is not always required, under what circumstances would an evidentiary hearing be necessary; and (3) was the trial court required to hold an evidentiary hearing in Garner's case.

## III. IS AN EVIDENTIARY[5] HEARING ALWAYS REQUIRED?

In *Watkins v. Sowders*, 449 U.S. 341 (1981), the Supreme Court concluded that due process of law

---

[5] In this appeal, Garner articulates the issue: "Whether the trial court violated defendant's right to due process by denying, without hearing, his motion to suppress an identification . . . ."

under the Fourteenth Amendment does not require a state trial court to conduct an evidentiary hearing whenever a defendant challenges the admissibility of identification.[6] The Court explained, however, that "[a] judicial determination outside the presence of the jury of the admissibility of identification evidence *may often be advisable*" and, "*[i]n some circumstances . . .* constitutionally necessary." *Id.* at 349 (emphasis added). Clearly, therefore, under *Watkins*, due process does not always require an evidentiary hearing when a defendant moves to suppress identification.

---

Later in his brief Garner frames the issue by "alleging that he was denied due process by the court's denial of his suppression motion without holding a hearing, taking evidence, or developing any factual basis for the denial." We emphasize that, in this case, the trial court did hold a hearing. The trial court heard from counsel, examined the record and, in effect, received an offer of proof through defense counsel's summary. A denial of a *hearing* would, of course, be a denial of due process. Here, however, we are considering whether the trial court denied due process by denying an *evidentiary hearing* based on the information it obtained during its nonevidentiary consideration of the issue.

[6] The U.S. Supreme Court distinguished between a motion to suppress a confession (where, in Wisconsin, an evidentiary hearing is required, *see* § 971.31(3), STATS.), and a motion to suppress identification:

> " '[w]hile identification testimony is significant evidence, such testimony is still only evidence, and, unlike the presence of counsel, is not a factor that goes to the very heart—the 'integrity'—of the adversary process.
>
> " 'Counsel can both cross-examine the identification witnesses and argue in summation as to factors causing doubts as to the accuracy of the identification. . . .' "

*Watkins v. Sowders*, 449 U.S. 341, 348 (1981) (citations omitted).

531

## IV. UNDER WHAT CIRCUMSTANCES IS AN EVIDENTIARY HEARING REQUIRED?

In this case, the trial court concluded that a defendant must allege facts that would warrant suppression in order to gain an evidentiary hearing on a motion to suppress identification. The State agrees and, on appeal, urges this court to apply the *Nelson v. State* standards utilized by the trial court:

> [I]f the defendant fails to allege sufficient facts in his motion to raise a question of fact, or presents only conclusionary allegations, or if the record conclusively demonstrates that the defendant is not entitled to relief, the trial court may in the exercise of its legal discretion deny the motion without a hearing.

*Nelson*, 54 Wis. 2d at 497-498, 195 N.W.2d at 633. We agree that the *Nelson* standards provide a solid foundation on which to build the analysis. As the trial court pointed out, these standards, applied to a pretrial motion to suppress identification, are consistent with that portion of § 971.30(2)(c), STATS., mandating that pretrial motions "[s]tate with particularity the grounds for the motion."[7]

The trial court also noted, however, that the *postconviction* standards of *Nelson*, standing alone, would not always be adequate to measure whether an evidentiary hearing is required for a *pretrial* motion to

---

[7] Moreover, as the State contends, in an identification challenge, this requirement is realistic. After all, because defendants are present at identifications, they usually will be aware of the facts upon which the challenge is based. Indeed, as the State also argues, this is all the more apparent in the many police line-ups and other identification procedures where often defense counsel also is present.

suppress identification. After all, as the parties acknowledge, a defendant rarely would be in a position to know whether police attempted to say or do anything to influence a witness's identification. Thus, applying *only* the *Nelson* standards to a motion to suppress identification, a trial court could deny a defendant the opportunity to expose whether police pointed to one photo of an array, persuaded a witness to select one person from a line-up, or whispered words prompting an identification.

Therefore, on an identification suppression motion, although a defendant may be unable to allege sufficient specific facts to warrant relief, a trial court must provide the defendant the opportunity to develop the factual record where the motion, alleged facts, inferences fairly drawn from the alleged facts, offers of proof, and defense counsel's legal theory satisfy the court of a reasonable possibility that an evidentiary hearing will establish the factual basis on which the defendant's motion may prevail.[8] On an identification suppression motion, however, a defendant is not entitled to an evidentiary hearing simply to search for

---

[8] The timing and scope of an evidentiary hearing remain within a trial court's discretion. Under some circumstances, an evidentiary hearing may fairly and efficiently take place during a break in the trial. Moreover, regardless of its timing, an evidentiary hearing may be limited to dispositive factual issues. For example, if it is clear that an identification procedure was proper except for the possibility that a police officer improperly prompted a witness, the trial court may "cut to the chase" to elicit testimony on that point alone.

*something* based on *nothing* but hope or pure speculation.[9]

■

Thus, in determining whether to grant an evidentiary hearing, trial courts must, on a case-by-case basis, carefully consider the record,[10] the motion,

---

[9] While concluding that evidentiary hearings on identification suppression motions are not always required, we also caution trial courts not to seize upon this as a time-saving device. Although many trial courts face overwhelming caseloads and countless evidentiary motions, they must remain vigilant in protecting a defendant's right to challenge police identification procedures. The time saved by denying a hearing is insignificant in comparison to the constitutional considerations at issue and the time consumed when a case must be remanded because of an improvident denial of an evidentiary hearing.

[10] In this case, the State argues that testimony at the preliminary hearing supports the denial of an evidentiary hearing. Its brief to this court maintains:

> [T]he state recognizes that a preliminary hearing normally does not substitute for a suppression hearing on a motion challenging identification evidence because of the different purposes for the hearings. Nevertheless, when significant evidence concerning the reliability of a challenged identification has been developed at a preliminary hearing, and when the defendant has had a fair opportunity to test that information, the need for a suppression hearing may be rendered moot.

In this case, the trial court did not base its decision on the preliminary hearing testimony and, as a practical matter, we note that preliminary hearing transcripts often have not been prepared by the time motions to suppress are being considered. Still, trial courts may indeed see cases in which preliminary hearing transcripts provide factual background that assists their case-by-case analysis. In fact, in some cases, the parties may choose to stipulate to preliminary hearing testimony as part or all of the factual record on which the trial court may base

534

counsels' arguments and/or offers of proof, and the law. Where the record establishes no factual scenario or legal theory on which the defendant may prevail, and/or where the defendant holds only hope but articulates no factually-based good faith belief that any impropriety will be exposed through an evidentiary hearing, the evidentiary hearing is not required.

## V. WAS AN EVIDENTIARY HEARING REQUIRED IN THIS CASE?

■

A defendant is denied due process when identification is derived from police procedures "so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." *Simmons v. United States*, 390 U.S. 377, 384 (1968); *State v. Wolverton*, 193 Wis. 2d 234, 264, 533 N.W.2d 167, 178 (1995), *cert. denied*, 116 S.Ct. 828 (1996). Whether a police identification procedure violates due process presents a question of law subject to our independent review. *State v. Kaelin*, 196 Wis. 2d 1, 10, 538 N.W.2d 538, 541 (Ct. App. 1995).

■

A "showup" is a police procedure in which a single suspect is presented to a witness for identification.

---

its decision. We caution, however, that a preliminary hearing serves specific and distinct purposes. A defendant often would not be allowed to elicit testimony at a preliminary hearing that would be needed at a motion to suppress identification. Thus, a defendant must not be denied an evidentiary hearing on a motion to suppress identification *solely* because the motion would not prevail based on the evidence adduced at the preliminary hearing, unless the defendant concedes that the preliminary hearing contains an adequate record of the facts on which the motion is based.

*Wolverton*, 193 Wis. 2d at 263 n.21, 533 N.W.2d at 177 n.21. Frequently, a showup occurs at or near a crime scene, shortly after the crime; thus the "confrontation, proximate in time and place to the commission of the crime, 'promote[s] fairness, by assuring reliability' because the witness's or victim's memory is fresh." *Kaelin*, 196 Wis. 2d at 11-12, 538 N.W.2d at 541. Often it is "a preferred procedure because if no identification is made, the suspect may be released and the police can continue their investigation." *Id.* at 12, 538 N.W.2d at 541. Factually, of course, showups are suggestive but legally they "are not *per se* impermissibly suggestive." *Wolverton*, 193 Wis. 2d at 264, 533 N.W.2d at 178.

Garner's several assertions essentially allege that the identification should be suppressed because: Ms. Burris provided a minimal description of the burglar to the police; police stopped another suspect matching the description; police displayed Garner, handcuffed, in poor lighting, and spotlighted him;[11] and Ms. Burris identified him from a distance "in a matter of seconds." Abundant case law clarifies that although any of these factors could reduce the weight a jury might give to Ms. Burris's identification, none renders her identification inadmissible.[12]

---

[11] It is unclear, but immaterial, whether Garner considered the spotlight unfair because it featured him in a targeted manner or, as the trial court stated, because the spotlight was "not bright enough" for Burris to see him.

[12] The case law concluding that showups under circumstances comparable to these were not impermissibly suggestive is voluminous. *See e.g., State v. Wolverton*, 193 Wis. 2d 234, 533 N.W.2d 167 (1995), and *State v. Kaelin*, 196 Wis. 2d 1, 538 N.W.2d 538 (Ct. App. 1995); *see also* 1 WAYNE R. LaFAVE & JEROLD H. ISRAEL, CRIMINAL PROCEDURE § 7.4(f) (1984).

Therefore, because Garner offered no factual basis, legal theory, or area of intended evidentiary development that could have supported his motion to suppress identification, the trial court correctly concluded that an evidentiary hearing was not required. Accordingly, we affirm.

*By the Court*—Judgment and order affirmed.