STATE of Wisconsin, Plaintiff-Respondent,

v.

James M. MORAN, Defendant-Appellant-Petitioner.

Supreme Court

*No. 2003AP561–CR. Oral argument April 12, 2005.
—Decided July 12, 2005.*

2005 WI 115

(Also reported in 700 N.W.2d 884.)

For the defendant-appellant-petitioner there were briefs by *Colleen D. Ball* and *Appellate Counsel, S.C.,* Wauwatosa, and oral argument by *Colleen D. Ball.*

For the plaintiff-respondent the cause was argued by *Daniel J. O'Brien,* assistant attorney general, with whom on the briefs was *Peggy A. Lautenschlager,* attorney general.

An amicus curiae brief was filed by *Keith A. Findley, Byron C. Lichstein, John A. Pray* and *University of Wisconsin Law School,* Madison, on behalf of the Wisconsin Innocence Project.

¶ 1. DAVID T. PROSSER, J. This is a review of an

unpublished decision of the court of appeals[1] affirming an order of the circuit court for Dane County, David T. Flanagan, Judge. The circuit court denied a motion by James M. Moran (Moran) for post-conviction deoxyribonucleic acid (DNA) testing of certain blood samples pursuant to Wis. Stat. § 974.07 (2001–02),[2] enacted by the legislature in 2001.

¶ 2.   We granted Moran's pro se petition for review which raised broad issues about § 974.07, and we appointed Attorney Colleen D. Ball to serve as Moran's pro bono counsel. Attorney Ball posed three questions focusing on § 974.07(7). The applicability of § 974.07(6) was raised at oral argument. After supplemental briefing by the parties, we determined that this case should be decided on the basis of § 974.07(6).

¶ 3.   We conclude that the plain language of § 974.07(6) gives a movant the right to conduct DNA testing of physical evidence that is in the actual or constructive possession of a government agency and that contains biological material or on which there is biological material, *if* the movant meets several statutory prerequisites. First, the movant must show that the evidence meets the conditions under Wis. Stat. § 974.07(2). Second, the movant must comply with all reasonable conditions imposed by the court to protect the integrity of the evidence. Third, the movant must conduct any testing of the evidence at his or her own expense. If a movant seeks DNA testing at public expense, the movant must proceed under § 974.07(7)(a) or (b), and satisfy the heightened requirements in subsection (7).

---

[1] *State v. Moran,* No. 2003AP561–CR, unpublished slip op. (Wis. Ct. App. Mar. 18, 2004).

[2] All subsequent references to the Wisconsin Statutes are to the 2001–02 edition unless otherwise indicated.

¶ 4.   We remand this case to the circuit court to allow it to address whether Moran's motion satisfies the requirements in § 974.07(2) and (6), and if it does, to set conditions on the availability and integrity of the evidence.

## I. FACTS AND PROCEDURAL HISTORY

¶ 5.   Moran met Corrine Pinchard (Pinchard) at an exotic pet store he owned and operated in Madison. The two became romantically involved, but their relationship ended. The parties dispute who decided to break off the relationship. Pinchard eventually became involved with another man, Jacob Jensen (Jensen), who was also employed at Moran's pet store.

¶ 6.   At about 1:00 A.M. on June 17, 1994, Pinchard and Jensen were together in Pinchard's apartment. They became concerned that Moran would make an unwanted visit to the apartment after Pinchard received an anonymous phone call from someone pretending to be a maintenance man for the apartment building. Pinchard believed she recognized the anonymous caller as Moran. Pinchard knew that the outer back door to the apartment building had been tied open, and so she and Jensen decided to go downstairs to shut it. Before leaving the apartment, Jensen armed himself with a brick he found in Pinchard's apartment.

¶ 7.   Jensen and Pinchard never made it downstairs. When Jensen opened the stairwell fire door, he saw Moran on the stairs. The subsequent events were disputed at trial. Jensen claimed that Moran charged at him while holding a knife and pushed him down. According to both Pinchard and Jensen, Moran then pushed Pinchard into her apartment and locked the door while yelling that he planned to kill both Pinchard

31

and himself. While Moran and Pinchard were locked inside the apartment, he stabbed her multiple times.

¶ 8.  Jensen testified that he ran down the hallway to a nearby apartment. He alerted the occupants of what was happening and convinced them to call "911." Jensen testified that as he re-entered the hallway area and began to walk back, Moran emerged from Pinchard's apartment door. Leaving the apartment, Moran "charged" Jensen in the hallway, wielding the knife, and attempted to stab him in the chest. He succeeded only in slashing Jensen's hand and arm. Neither Pinchard nor Jensen could recall how or why Moran left the scene.

¶ 9.  Pinchard and Jensen both testified that after the stabbings, they did not re-enter Pinchard's apartment. Instead, they waited for the police in the apartment down the hall where Jensen had earlier convinced the occupants to dial "911."[3]

¶ 10.  Moran's version of these events was very different. He admitted that he entered the building through the open back door. He claimed that after he saw Jensen in the stairwell, he pushed past Jensen to try to reach Pinchard. Moran claimed that after he passed Jensen, Jensen struck him in the back of the head with a blunt object, dazing him. A struggle between the two men ensued in Pinchard's apartment. Moran claimed that Pinchard attempted to intervene in the struggle, and while she did so, she was inadvertently stabbed multiple times.[4]

---

[3] Moran exposed some inconsistency in Jensen's account through testimony from occupants of the other apartment. They said that Jensen came in the second apartment only once, after he had been wounded, not twice, as his story went.

[4] Dr. Nicholas Augelli treated Pinchard for nine stab wounds, some of which were deep enough that they may have penetrated Pinchard's chest cavity. One caused her right lung to

¶ 11. Moran also admitted that he "cut" Jensen. Dr. Stuart Stitgen testified that Jensen suffered permanent muscle damage to his left wrist and that Moran severed nerves and tendons in Jensen's hand. Moran also cut Jensen deeply enough that he chipped one of the bones in Jensen's hand. Moran argued, however, that he inflicted all these injuries in self-defense while the two men struggled *inside* Pinchard's apartment, not in the hallway, as Jensen claimed.

¶ 12. Moran admitted that after this altercation, he fled the scene, discarded his shirt into a storm drain, and threw away his knife. He then either attempted or faked his own suicide, stole a vehicle, and drove to La Crosse. Upon arriving in La Crosse, he turned himself in to authorities and confessed to the stabbings, making no mention of self-defense.[5]

¶ 13. During the investigation of the crime scene, the police obtained numerous blood samples in Pinchard's apartment, some of which are at issue here. Specifically, the police obtained a blood sample from the kitchen floor, a sample from a bloody brick near the bedroom, and a sample from the bedroom door. A private detective working for Moran obtained blood samples from the door of an apartment across the hall.

---

collapse. Dr. Augelli testified that Pinchard was "in shock" when he treated her.

[5] The arresting officer read Moran his *Miranda* warnings. Moran replied that he was aware of his rights and nevertheless wanted to "tell [the officer] what happened." Moran stated "that he had been involved in a stabbing in Madison, that he thought he may have killed two people." Moran stated that he couldn't be sure whether Pinchard and Jensen were alive or dead and "for that reason it was getting the best of him, he couldn't live with himself because of not knowing." Moran also confessed the stabbings to the booking officer at the La Crosse County Sheriff's Department.

¶ 14. On the day of the incident, June 17, 1994, the State charged Moran with two counts of attempted first-degree intentional homicide, contrary to § 939.32(1)(a) and § 940.01(1). On August 11, 1994, the State amended the complaint, adding the element of "using a dangerous weapon" (contrary to § 939.63(1)(a)2.) to each of the two attempted homicide counts and adding one count of taking and driving a vehicle without the owner's consent in violation of § 943.23(2). On January 13, 1995, the State again amended the complaint, adding two counts of first-degree reckless injury while using a dangerous weapon in violation of § 940.23(1) and § 939.63(1)(a)2.

¶ 15. Attorney Dennis E. Burke was initially appointed to represent Moran, but he withdrew on the grounds that his continued representation could result in a violation of the Code of Professional Responsibility.[6]

¶ 16. Moran thereafter declined counsel and represented himself. The jury trial was held between February 27 and March 3, 1995. During trial, Moran pled guilty to one count of reckless injury and to the charge of taking and driving a vehicle without the owner's consent.

¶ 17. The jury trial on the remaining three counts developed into a credibility contest among Pinchard, Jensen, and Moran. Essentially, Pinchard and Jensen testified that the injuries they sustained occurred during separate encounters with Moran—Pinchard's after Moran locked her inside her apartment with him, and Jensen's in the hallway after Moran emerged from the apartment. By contrast, Moran testified that all the

---

[6] The reasons for Attorney Burke's withdrawal are not material to this case.

injuries to Pinchard and Jensen occurred at the same time, inside the apartment, while the three of them grappled together.

¶ 18. While testifying on his own behalf in narrative form, Moran decided to play for the jury the tape of his confession to the La Crosse police. He was later subjected to devastating cross-examination by the State. In addition to exposing the inconsistencies between Moran's trial theory of the case and his confession to the police, the State successfully introduced multiple letters and statements in which Moran repeated his confession to the stabbings.

¶ 19. In a rambling closing argument, Moran turned repeatedly to the subject of the "bloody brick," with which he alleged Jensen assaulted him.

> It wasn't even taken into evidence. It was never tested for the type of blood on it. It was never tested for skin on it. It was never tested for hair.
>
> . . . .
>
> I wish nothing more than to have that brick as evidence. I wish nothing more than blood samples would have been taken from all over that apartment. One drop of Jake's blood in that apartment and both their stories is a lie, all lies, because Jake was never inside the apartment[,] so he says.
>
> . . . .
>
> How did the blood get on that brick? Is it Jake's blood? It doesn't have to be my blood. See if it is Jake's blood, that puts Jake in possession of that brick right there. Right? He has to have a hold of the brick before I cut him, or he has to have the brick after I cut him. But, in any case, he has still got that brick. You can't refute the fact that Jake was in possession of that brick at the time he received his injuries.

¶ 20. Ultimately, the jury accepted Pinchard and Jensen's version of the facts and convicted Moran on the remaining counts on March 3, 1995. On July 18, 1995, Dane County Circuit Judge Mark A. Frankel sentenced Moran to 72 years in prison.[7]

¶ 21. Moran appealed, still proceeding pro se. An attorney appointed to represent him filed a "no merit" brief pursuant to Wis. Stat. § (Rule) 809.32 and *Anders v. California,* 386 U.S. 738 (1967).[8] Moran filed a pro se response to the no merit brief and several amendments to his response.[9] The court of appeals, upon consideration of the no merit brief and Moran's responses, affirmed.[10] It also independently reviewed the record and found no additional potentially meritorious issues for review.[11] This court denied Moran's petition for review on September 2, 1997.[12]

---

[7] The court sentenced Moran to 25 years, consecutively, for each count of attempted homicide; 10 years, consecutively, for each count of reckless injury; and 2 years for the vehicle theft.

[8] *State v. Moran,* No. 96AP1575–CRNM, unpublished slip op. at 2 (June 12, 1997). In *Anders,* the court held that appointed counsel, upon finding the petitioner's case wholly frivolous, could file a letter brief with the court so stating, and thus discharge his or her duty of representation. *Anders v. California,* 386 U.S. 738, 744 (1967). However, the letter brief must contain references to anything in the record supporting the petitioner's appeal, and the petitioner must be allowed to proceed pro se if he so chooses. *Id.*

[9] *State v. Moran,* No. 96AP1575–CRNM, unpublished slip op. at 2 (June 12, 1997).

[10] *Id.*

[11] *Id.* at 10.

[12] *State v. Moran,* 212 Wis. 2d 689, 569 N.W.2d 590 (1997) (Table).

¶ 22. Some time after the denial of his appeal, Moran retained Attorney George A. Limbeck. On November 15, 1999, Attorney Limbeck sent a letter to Assistant District Attorney Jac G. Heitz "ask[ing] your consent and cooperation in having DNA typing done on all four[13] blood samples . . . ." Attorney Limbeck promised that "my client would pay all expenses associated with the testing . . . ."[14]

¶ 23. Approximately three years later, on April 22, 2002, Moran filed a motion seeking DNA testing of a number of blood samples found at the scene, including three "unknown blood samples" taken from inside Pinchard's apartment and the blood sample from the door across the hall.[15] The motion did not reference Wis. Stat. § 974.07, which was in effect at the time Moran filed his motion, having been included in the 2001 Budget Bill. *See* 2001 Wis. Act 16, § 4028j. Instead, Moran cited *State v. Hicks,* 202 Wis. 2d 150, 549 N.W.2d 435 (1996), and "point[ed] out to the court that the defendant has tried to have D.N.A. evidence tested for years." The circuit court denied the motion on August 21, 2002, stating that "[t]he defendant's motion offers no explanation as to how the testing of the five blood samples could have impact upon . . . the jury verdicts in this matter," and that "[s]uch evidence would not make more credible the defendant's absurd theory that he stabbed Ms. Pinchard nine times inadvertently."

---

[13] Attorney Limbeck's letter referenced four blood samples: (1) blood found at the scene on the door to an apartment across the hall from Pinchard's apartment; (2) Moran's blood; (3) Pinchard's blood; and (4) Jensen's blood.

[14] According to the State, "Moran fired Attorney Limbeck before any action was taken in response to Limbeck's letter."

[15] On April 22, 2002, Moran also asked the court to maintain "any/all D.N.A. evidence that relates" to his case.

¶ 24. In response, Moran filed another motion, this time citing Wis. Stat. § 974.07. Specifically, Moran alleged that his motion satisfied all the criteria set out in § 974.07(2). The circuit court denied this second motion on February 5, 2003. On February 13, 2003, Moran filed a "motion for reconsideration." The circuit court denied this "motion," stating that Moran had the right to appeal the order. Moran appealed, and the court of appeals affirmed.[16] Moran filed a petition for review, which we granted on November 16, 2004.

¶ 25. In their briefs, the parties focused our attention almost exclusively on § 974.07(7), pertaining to court-ordered DNA testing. However, at oral argument on April 12, 2005, Moran's counsel directed our attention to § 974.07(6), under which a movant may request certain biological material from the district attorney. We requested supplemental briefs from both parties regarding the impact of Moran's argument under § 974.07(6).

## II. STANDARD OF REVIEW

¶ 26. We must determine whether, under Wis. Stat. § 974.07, Moran has a right to obtain and test certain biological material. Statutory interpretation and the application of a statute to specific facts are questions of law that we review de novo. *See State v. Harris*, 2004 WI 64, ¶ 25, 272 Wis. 2d 80, 680 N.W.2d 737. This court clarified the proper method of statutory

---

[16] *State v. Moran*, No. 2003AP561–CR, unpublished slip op. (Wis. Ct. App. Mar. 18, 2004). Moran's case was decided in the circuit court and the court of appeals before the decision in *State v. Hudson*, 2004 WI App 99, 273 Wis. 2d 707, 681 N.W.2d 316. *See* ¶¶ 49–51, *infra*.

interpretation last term in *State ex rel. Kalal v. Circuit Court for Dane County,* 2004 WI 58, 271 Wis. 2d 633, 681 N.W.2d 110. In *Kalal,* we stated: "statutory interpretation 'begins with the language of the statute. If the meaning of the statute is plain, we ordinarily stop the inquiry.'" *Id.,* ¶ 45 (internal citations omitted). The court should assign the words in the statute their ordinarily accepted meaning. *Id.* The court may also consider the context and structure of the statute. *Id.,* ¶ 46. "'If this process of analysis yields a plain, clear statutory meaning, then there is no ambiguity, and the statute is applied according to this ascertainment of its meaning.' Where statutory language is unambiguous, there is no need to consult extrinsic sources of interpretation, such as legislative history." *Id.* (internal citations omitted).

## III. ANALYSIS

¶ 27. Moran seeks to test blood samples obtained from the crime scene pursuant to Wis. Stat. § 974.07. That statute provides, in relevant part:

974.07 Motion for postconviction deoxyribonucleic acid testing of certain evidence.

. . . .

(2) At any time after being convicted of a crime . . . a person may make a motion in the court in which he or she was convicted . . . for an order requiring forensic deoxyribonucleic acid testing of evidence to which all of the following apply:

(a) The evidence is relevant to the investigation or prosecution that resulted in the conviction . . . .

(b) The evidence is in the actual or constructive possession of a government agency.

(c) The evidence has not previously been subjected to forensic deoxyribonucleic acid testing or, if the evidence has previously been tested, it may now be subjected to another test using a scientific technique that was not available or was not utilized at the time of the previous testing and that provides a reasonable likelihood of more accurate and probative results.

. . . .

(6)(a) Upon demand the district attorney shall disclose to the movant or his or her attorney whether biological material has been tested and shall make available to the movant or his or her attorney the following material:

1. Findings based on testing of biological materials.

2. Physical evidence that is in the actual or constructive possession of a government agency and that contains biological material or on which there is biological material.

(b) Upon demand the movant or his or her attorney shall disclose to the district attorney whether biological material has been tested and shall make available to the district attorney the following material:

1. Findings based on testing of biological materials.

2. The movant's biological specimen.

(c) Upon motion of the district attorney or the movant, the court may impose reasonable conditions on availability of material requested under pars. (a)2. and (b)2. in order to protect the integrity of the evidence.

(d) This subsection does not apply unless the information being disclosed or the material being made available is relevant to the movant's claim at issue in the motion made under sub. (2).

(7)(a) A court in which a motion under sub. (2) is filed shall order forensic deoxyribonucleic acid testing if all of the following apply:

1. The movant claims that he or she is innocent of the offense at issue in the motion under sub. (2).

2. It is reasonably probable that the movant would not have been . . . convicted . . . if exculpatory deoxyribonucleic acid testing results had been available before the prosecution [or] conviction . . . .

3. The evidence to be tested meets the conditions under sub.(2)(a) to (c).

. . . .

(b) A court in which a motion under sub.(2) is filed may order forensic deoxyribonucleic acid testing if all of the following apply:

1. It is reasonably probable that the outcome of the proceedings that resulted in the conviction . . . would have been more favorable to the movant if the results of . . . testing had been available before he or she was prosecuted [or] convicted . . . .

2. The evidence to be tested meets the conditions under sub.(2)(a) to (c).

. . . .

¶ 28.  Moran argues that he is entitled to testing under either Wis. Stat. § 974.07(6) or § 974.07(7).

A.  Waiver

¶ 29.  Before addressing the substance of Moran's position, we must address the State's argument that Moran has waived any reliance on Wis. Stat. § 974.07(6) by not raising that argument until very late in this

41

appeal. The State notes that (1) Moran never filed a motion in the circuit court citing § 974.07(6); (2) Moran did not mention § 974.07(6) in his briefs to the court of appeals and, therefore, that court did not mention the subsection in its opinion; (3) Moran did not cite § 974.07(6) in his petition for review to this court, and this court did not mention that subsection in granting the petition; (4) Moran did not mention § 974.07(6) in his briefs to this court, except for a "passing reference" in his reply brief; and (5) Moran "expressly abandoned" any claim for relief under § 974.07(6) in his pro se brief to the court of appeals.[17]

¶ 30.   Moran responds that while he "did not precisely label the relief he sought, the substance of [the] request [was] clear enough." *See bin-Rilla v. Israel,* 113 Wis. 2d 514, 521, 335 N.W.2d 384 (1983) ("Neither a trial nor an appellate court should deny a prisoner's pleading based on its label rather than on its allegations. If necessary the court should relabel the prisoner's pleading and proceed from there.").

¶ 31.   While we agree with the State that "the general rule is that issues not raised in the circuit court are deemed waived," *State v. Polashek,* 2002 WI 74, ¶ 25, 253 Wis. 2d 527, 646 N.W.2d 330, the rule is not absolute. *Id.* The waiver rule articulates this court's general policy of judicial administration, not the extent of our power to hear issues. *See Wirth v. Ehly,* 93 Wis.

---

[17] The State relies on Moran's assertion that "My parents [are] unable to [pay for DNA testing] now, as this situation has been drug out for nearly four (4) years and at an enormous cost to my parents which they can not afford to do forever." The State argues that as Moran admitted in the past that he could not pay for the testing, there is no reason to authorize him to do so under (6).

2d 433, 444, 287 N.W.2d 140 (1980). Thus, when an issue involves a question of law, has been briefed by the opposing parties, and is of sufficient public interest to merit a decision, this court has discretion to address the issue. *Apex Elecs. Corp. v. Gee,* 217 Wis. 2d 378, 384, 577 N.W.2d 23 (1998). Having determined that the interpretation of § 974.07(6) presents an issue of sufficient public interest to merit a decision, we gave both parties the right to fully brief the issue of § 974.07(6). They did so, and we now exercise our discretion to address the issue.

B.   Section 974.07(6)

¶ 32.   We begin our interpretation of § 974.07(6) with the plain language of the statute.

¶ 33.   First, subsection (6) requires that, upon demand, the district attorney must disclose "whether biological material has been tested . . . and make available . . . [f]indings based on testing of biological materials." Wis. Stat. § 974.07(6)(a)1. This provision serves as a limited post-conviction discovery statute that complements Wis. Stat. § 971.23.

¶ 34.   The *pretrial* "discovery and inspection" statute requires a district attorney, "upon demand," to disclose

> any reports . . . of experts made in connection with the case or, if an expert does not prepare a report or statement, a written summary of the expert's findings or the subject matter of his or her testimony, and the results of any . . . scientific test, experiment or comparison *that the district attorney intends to offer in evidence at trial.*

Wis. Stat. § 971.23(1)(e) (emphasis added). The district attorney is also required to turn over "[a]ny physical

43

evidence *that the district attorney intends to offer in evidence at the trial,*" § 971.23(1)(g), and "[a]ny exculpatory evidence." § 971.23(1)(h) (emphasis added).

¶ 35. The post-conviction discovery statute, § 974.07(6)(a), permits a person to obtain information about findings based on testing of biological materials that the district attorney was not required to disclose before trial *or* that a government agency obtained after trial.

¶ 36. The statute also requires the district attorney to disclose "[p]hysical evidence that is in the actual or constructive possession of a government agency and that contains biological material or on which there is biological material." Wis. Stat. § 974.07(6)(a)2.

¶ 37. The scope of § 974.07(6)(a)2. is problematic because § 974.07 does not define the term "biological material." A newly adopted supreme court rule regarding record retention, SCR 72.01(46m), provides in part: "Any criminal case *exhibit* identified by the parties, the clerk, or the court as containing biological material and that remains in the court's custody shall be retained for 50 years after entry of final judgment or until the court otherwise orders the disposition of the evidence under s. 974.07, Stats." (Emphasis added.) This rule suggests a process for identifying exhibits that must be retained. However, Wis. Stat. § 974.07(6)(a)2. is more open ended, as it requires a district attorney to disclose "physical evidence . . . that contains biological material or on which there is biological material" that was obtained and retained before the above-cited rule was adopted as well as "physical evidence" that was never used at a trial.

¶ 38. The State argues that it need make available only materials that have *already* been tested. Essentially, the State claims that the statute requires

44

the district attorney to "make those test results available to the defense . . . along with the biological material *that has been so tested.*" (Emphasis added.) For good or ill, the plain language of the statute leads us to a different conclusion.

¶ 39. We would have to add language to the statute in order to justify the State's interpretation. If the State's interpretation were correct, the following underlined language would have to be added to § 974.07(6)(a)2:

> (6)(a) Upon demand the district attorney shall disclose to the movant . . . whether biological material has been tested and shall make available to the movant . . . the following material:

> 1. Findings based on testing of biological materials.

> 2. Physical evidence that *has been tested and* is in the actual or constructive possession of a government agency and that contains biological material or on which there is biological material.

Wis. Stat. § 974.07(6) (underlined text supplied).

¶ 40. The second subdivision does not contain the emphasized language. By contrast, subdivision (6)(a)1. *does* contain language specifying that the State must release findings "based on testing." The second subdivision contains no such qualification, and it is not this court's role to supply such language. We are simply " 'not at liberty to disregard the plain, clear words of the statute.' " *Kalal,* 271 Wis. 2d 633, ¶ 46 (citation omitted).

¶ 41. Nonetheless, because subdivision (6)(a)2. is so open ended in terms of the "physical evidence" that a

45

district attorney is required to disclose, there is a practical necessity that a motion to disclose should comply with Wis. Stat. § 971.30(2), stating "with particularity" the evidence or the type of evidence that the movant is seeking.[18]

¶ 42. Second, the plain language of the statute requires that the requested material be "relevant to the movant's claim at issue in the motion made under sub. (2)." Wis. Stat. § 974.07(6)(d). Subsection (2) , in turn, imposes three requirements. First, the evidence containing biological material must be "relevant to the investigation or prosecution that resulted in the conviction . . . ." Second, the evidence must be in the government's possession. Third, the evidence must not have been subjected to forensic DNA testing or, if so tested, "may now be subjected to another test that was not available or was not utilized at the time of the previous testing and that provides a reasonable likelihood of more accurate and probative results." The third requirement listed in subsection (2) provides an additional reason why subsection (6) does not apply only to material that has already been tested.

¶ 43. Assuming that the State possesses material that the movant wishes to test, the circuit court must undertake the three-pronged analysis in Wis. Stat. § 974.07(2). If these requirements are satisfied, the plain language of the statute dictates that the movant should receive access to the evidence, and may subject the material to DNA testing at his or her own expense. At that point, the circuit court may set conditions on the testing pursuant to Wis. Stat. § 974.07(6)(c).

---

[18] *Cf. State v. Caban,* 210 Wis. 2d 597, 605–06, 563 N.W.2d 501 (1997); *State v. Garner,* 207 Wis. 2d 520, 532, 558 N.W.2d 916 (Ct. App. 1996).

¶ 44. In this case, the circuit court did not evaluate whether the evidence met the requirements in sub. (2) because it concluded that "[t]he defendant's motion offers no explanation as to how the testing of the five blood samples could have impact upon . . . the jury verdicts in this matter," and that "[s]uch evidence would not make more credible the defendant's absurd theory that he stabbed Ms. Pinchard nine times inadvertently."

■

¶ 45. Because the circuit court did not analyze the language of § 974.07(2), it did not specifically determine whether the evidence was relevant. Wisconsin Stat. § 904.01 defines "relevant evidence" as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." We have noted that the circuit court has "considerable discretion" in determining whether a particular piece of evidence is "relevant." *Chart v. Gen. Motors Corp.,* 80 Wis. 2d 91, 102, 258 N.W.2d 680 (1977). We have described the appropriate inquiry as " 'whether there is a logical or rational connection between the fact which is sought to be proved and a matter of fact which has been made an issue in the case.' " *Shapiro v. Klinker,* 257 Wis. 622, 626, 44 N.W.2d 622 (1950) (citation omitted).

¶ 46. It will be Moran's burden on remand to show that the tests he seeks to conduct will be relevant to his prosecution (namely, his conviction or his sentence). For instance, Moran will have to show that the determination of whose blood is on the "bloody brick" is evidence having a tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.

¶ 47. We note that allowing Moran to test the evidence at his expense does not guarantee that he will get a new trial, or even an evidentiary hearing. Rather, if the testing is done, the circuit court will determine whether or not the results "support the movant's claim." Wis. Stat. § 974.07(9)-(10). If the results support the claim, the court will hold an evidentiary hearing to determine the appropriate relief. Wis. Stat. § 974.07(10).

¶ 48. Because it did not consider Moran's motion under the standards set out in § 974.07(2) and (6), the circuit court proceeded on the wrong theory of law. Accordingly, we remand this case to the circuit court in order to allow it to analyze Moran's motion under the proper standard.

¶ 49. We acknowledge the plausibility of the position that all motions for testing, as opposed to inspection, should proceed under Wis. Stat. § 947.07(7). Nonetheless, our conclusion that a person willing to pay for the testing himself may proceed under subsection (6) is buttressed by *State v. Hudson,* 2004 WI App 99, 273 Wis. 2d 707, 681 N.W.2d 316. In *Hudson,* the court of appeals considered a prisoner's motion for DNA testing under § 974.07(6) and (7).[19] In *Hudson,* the State "concede[d] the trial court erred by construing [subsection 6] to prevent independent testing of certain items at [the defendant's] expense, subject to protective conditions imposed by the trial court," *id.,* ¶ 12, so that the court of appeals did not address the issue.

_____

[19] Hudson filed a post-conviction motion for DNA testing of ten items not previously tested, seven containing blood. *State v. Hudson,* 2004 WI App 99, ¶ 18, 273 Wis. 2d 707, 681 N.W.2d 316.

¶ 50. Although it had argued before the circuit court that § 974.07(6) did not apply, the State changed its position in *Hudson* before the court of appeals and conceded that the defendant had a right to test the qualifying material at his own expense. In its brief in *Hudson*, the State argued that § 974.07(6) is ambiguous because it "does not state the purposes for which the state must make the biological material available . . . nor does it impose any limitations on what the defendant may do with the material." Significantly, the State did not advance the argument it makes in this case that subsection (6) applies only to material that has already been tested.

¶ 51. After examining the legislative history of the statute, the State's *Hudson* brief concluded that, "the better interpretation of sub. (6)(a) is that if the defendant has the ability to have the requested material tested at his own expense, the statute requires the state to make those materials available for testing subject to any protective order entered under sub. (6)(c) to protect the integrity of that material."

¶ 52. In the present case, the State has reversed course and reasserts the position it took at the circuit court level in *Hudson*. The State argues that "Moran has no right to relief under § 974.07(6) because he has demonstrated no right to relief under sub. (7)." The State correctly notes that when a movant invokes subsection (6), the court must determine whether the "material being made available is relevant to the movant's claim at issue in the motion made under sub. (2)." Wis. Stat. § 974.07(6)(d). However, the State then jumps to the conclusion that, "[a] claim for relief under sub. (2) then channels directly and narrowly into a request for mandatory testing under sub. (7)(a), and/or for discretionary testing under sub. (7)(b)."

49

¶ 53. That interpretation of sub. (6) was advanced by the circuit court in *Hudson*. On appeal, the State took the position that such an interpretation was incorrect and the court of appeals therefore reversed the circuit court as to that issue. *Hudson,* 273 Wis. 2d 707, ¶ 12. We think the position the State advanced in *Hudson* is more defensible than the position it takes here, and we disagree that resort to legislative history is necessary to reach the *Hudson* result.

¶ 54. In this case, the State relies on legislative history to support its interpretation that a motion under sub. (6) "channels directly and narrowly" into sub. (7). Nothing in the plain language of the statute "channels" subsection (6) or subsection (2) "directly and narrowly" into subsection (7). Indeed, subsection (7) is not even mentioned in either of the other two subsections. Because we resolve this case based on the plain language of the statute, we "stop the inquiry." *Kalal,* 271 Wis. 2d 633, ¶ 45. Murky legislative history should not be permitted to undermine plain statutory language.

¶ 55. Because we conclude that § 974.07(6) applies, we need not address the parties' arguments relating to § 974.07(7), except to note our disagreement with the State's argument that our holding marginalizes the importance of (7). As we see it, the statutory text makes clear that subsections (6) and (7) are intended for different purposes. Subsection (6) allows the movant *access* to the test results and/or material under some circumstances, but the movant must decide whether to test the material and must pay for the testing himself. Subsection (7), on the other hand, pertains to *court-ordered* testing at the State's expense.

¶ 56. The harsh reality of life is that some persons who have been convicted of crime may have the means to hire attorneys or investigators post-conviction under circumstances that would never justify the expenditure

50

of public money. The court is being asked in this case to prevent a person from conducting DNA testing at his own expense. We are unable to discern from the plain language of § 974.07 a clear legislative intent to block testing demanded by a person willing and able to pay until that person satisfies the requirements for publicly funded DNA testing. We encourage the legislature to revisit Wis. Stat. § 974.07 to define undefined terms, set limits to the evidence that must be provided, and give courts clear guidelines in procedure.

## IV. CONCLUSION

¶ 57. We conclude that the plain language of § 974.07(6) gives the defendant the right to test the sought-after evidence containing biological material if the circuit court determines that Moran meets all statutory prerequisites. First, Moran must show that the evidence meets the conditions under Wis. Stat. § 974.07(2). Second, Moran must comply with all reasonable conditions imposed by the court to protect the integrity of the evidence. Third, Moran must conduct any testing of the evidence at his own expense. If a movant seeks DNA testing at public expense, the movant must proceed under § 974.07(7)(a) or (b), and satisfy the heightened requirements in subsection (7). Subsection (6) provides free access to evidence but it does not provide free testing. Moran must pay for any testing permitted under subsection (6) himself.

¶ 58. We remand this case to the circuit court to allow it to address whether Moran's motion satisfies the requirements in Wis. Stat. § 974.07(2) and (6), and if it does, to set conditions on the availability and integrity of the evidence.

*By the Court.*—The decision of the court of appeals is reversed and the cause is remanded to the circuit court.

¶ 59. JON P. WILCOX, J. (*concurring*). I reluctantly agree with the majority's holding in this case. I write separately, however, to address the serious concerns raised by the broad language in Wis. Stat. § 974.07(6) (2001–02),[1] and I strongly urge the legislature to take a hard look at the practical consequences of this subsection. Although I am personally troubled with the end result, the plain language of § 974.07(6) gives Moran the right to access the "bloody brick" for DNA testing if, on remand, the circuit court determines that Moran meets all of the statutory prerequisites.

¶ 60. First, the plain language of § 974.07(6)(a)2. requires the district attorney to make available to the defendant "[p]hysical evidence that is in the actual or constructive possession of a government agency and that contains biological material or on which there is biological material." Contrary to the State's position, nothing in subsection (6) requires the district attorney to make available *only* materials that have already been tested. In contrast, § 974.07(6)(a)1., explicitly contains language specifying that the district attorney must release "[f]indings *based on testing* of biological materials." (Emphasis added.) Thus, while subdivision 1. is expressly limited to material that has been tested, I fully agree with the majority that "[t]he second subdivision contains no such qualification, and it is not this court's role to supply such language." Majority op., ¶ 40.

¶ 61. Second, the plain language of § 974.07(6) states that "[t]his subsection does not apply unless the

---

[1] All subsequent references to the Wisconsin Statutes are to the 2001–02 version unless otherwise indicated.

information being disclosed or the material being made available is relevant to the movant's claim at issue in the motion made under sub. (2)." Wis. Stat. § 974.07(6)(d). Subsection (2), in turn, requires that the evidence "has not previously been subjected to forensic [DNA] testing or, if the evidence has previously been tested, it may now be subjected to another test . . . ." Wis. Stat. § 974.07(2)(c). Thus, § 974.07(2)(a) further demonstrates that subsection (6) is not limited to material previously tested.

¶ 62. Therefore, based on the plain language of the relevant statutes, I am compelled to conclude that § 974.07(6) requires the district attorney to make available for DNA testing all physical evidence containing biological material, regardless of whether it was previously tested, if the requirements of § 974.07(2) are satisfied.

¶ 63. I fully acknowledge the value and importance of DNA evidence and testing to the criminal justice system. However, in light of this court's holding that recently-discovered DNA evidence not available during trial results in the real controversy not being tried and warrants a reversal of a conviction, *see State v. Armstrong*, 2005 WI 119, 283 Wis. 2d 639, 700 N.W.2d 98, the majority opinion in this case will have far-reaching consequences for the finality of convictions. While I am sensitive to the problem of false convictions, *Armstrong* and today's majority opinion have the potential to overburden our justice system and work great mischief for numerous legitimate convictions.

¶ 64. In *Armstrong*, this court held that the defendant was entitled to a new trial based on newly-discovered DNA evidence because it concluded that such DNA evidence proved "the real controversy was not fully tried," *id.*, ¶ 2, despite the "mountain of other

evidence incriminating Armstrong that [was] not affected in any way by the DNA test results at issue." *Id.,* ¶ 174 (Roggensack, J., dissenting). Essentially, the *Armstrong* majority, "equate[d] the idea of the 'matter not being fully tried' with new scientific identification procedures in a way that threatens to reopen convictions statewide every time a scientific improvement occurs, regardless of the lack of a probable effect on the issues underlying the jury's verdict." *Id.,* ¶ 180 (Roggensack, J., dissenting). Thus, the combined result of *Armstrong* and the present case is that convicted criminals now have easy access to biological material for DNA testing and a lower threshold to meet to overturn their conviction based on the results of that testing, even if there is a mountain of evidence supporting their conviction.

¶ 65. I note that the legislative history of § 974.07(6) indicates that the provision was added by a Legislative Reference Bureau attorney who suggested that a "discovery provision for postconviction DNA testing" was necessary. Letter from Robin Ryan and Michael Dsida, Legislative Attorneys, to Scott Walker, Waukesha Representative in the Wisconsin State Assembly (Dec. 8, 2000) (on file with the Legislative Reference Bureau). However, the drafting records contain very little commentary on this new provision. It seems that no one involved considered this provision as an additional means of obtaining material for testing; rather, the provision was viewed merely as a discovery provision of material that had already been tested. The drafters apparently assumed there were two possible ways that postconviction DNA testing could happen: mandatory court-ordered testing and discretionary court-ordered testing.

¶ 66.   Also, I note that the majority opinion seems to open up § 974.07(6) to an attack on equal protection grounds. The majority states that under subsection (6) "the movant must conduct any testing of the evidence at his or her own expense." Majority op., ¶ 3. It would seem that there is no reason why someone who cannot afford to pay for such testing would not be equally entitled to such evidence.

¶ 67.   In sum, the plain language of § 974.07(6) leads me to reluctantly join the majority opinion. As such, I respectfully concur.

¶ 68.   I am authorized to state that Justice PATIENCE DRAKE ROGGENSACK joins this concurrence.