COURT OF APPEALS
DECISION
DATED AND FILED

October 19, 2021

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2020AP1529-CR**

Cir. Ct. No. 2014CF3500

STATE OF WISCONSIN

IN COURT OF APPEALS
DISTRICT I

STATE OF WISCONSIN,

PLAINTIFF-RESPONDENT,

V.

DEVON KAMAR GREEN,

DEFENDANT-APPELLANT.

APPEAL from a judgment and an order of the circuit court for Milwaukee County: CAROLINA STARK and T. CHRISTOPHER DEE, Judges. *Affirmed*.

Before Brash, C.J., Donald, P.J., and Dugan, J.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1      PER CURIAM. Devon Kamar Green appeals a judgment of conviction and an order denying his postconviction motion. On appeal, Green argues that: (1) the trial court erred when it denied without an evidentiary hearing his motion to dismiss based on the State's failure to preserve a surveillance video and (2) the postconviction court erred when it denied without an evidentiary hearing his ineffective assistance of counsel claim for failure to investigate two alibi witnesses.[1] We reject Green's arguments and affirm.

## BACKGROUND

¶2      On August 2, 2014, around 12:30 a.m., a shooting took place outside Elim's Lounge in Milwaukee. According to the complaint, R.L. bumped into Green inside the bar and words were exchanged. Green left the bar, went to a parked car, and grabbed a gun. Green then started shooting at R.L., who was outside. R.L. sustained multiple gunshot wounds. D.B., who was exiting the bar at the time of the shooting, was shot in the leg. Green was charged with attempted first degree intentional homicide, first degree recklessly endangering safety, and possession of a firearm by a felon.

¶3      Prior to trial, Green informed the court that the police reports reflected that there were security cameras inside and outside of the bar and that he had not received the surveillance video. Subsequently, the State informed the defense that the police had failed to preserve the original surveillance video, but a citizen witness had a copy of the video.

---

[1] The Honorable Carolina Stark presided over Green's trial proceedings. The Honorable T. Christopher Dee presided over Green's postconviction proceedings. We refer to Judge Stark as the trial court and Judge Dee as the postconviction court.

¶4    Based on the State's failure to preserve the original surveillance video, Green orally moved to dismiss the case. Green explained to the trial court that a forensic investigator tried to upload the video on the night of the shooting, but was not able to do so, and after that, the police made no effort to get the video until it was provided by the citizen witness. Green further explained that the citizen video was a cellphone recording of a portion of the surveillance video that was playing on a television screen and "you can see the person getting shot fall down, but you can't see who is shooting him[.]"

¶5    The State confirmed that the police ran into issues obtaining the video, the lead detective went on family and medical leave, and "it sort of slipped through the cracks." The State disagreed that dismissal was the proper remedy and argued that the defense could cross-examine the police about the absence of the video.

¶6    After hearing the parties' arguments, the trial court denied the motion to dismiss. The court first found that the record did not support a finding that the original surveillance video had "an apparent exculpatory value[.]" The court then found that the video was "potentially exculpatory," but that the officers did not act in bad faith.

¶7    A multiple-day jury trial took place. At trial, the State called a number of witnesses, including R.L., S.H., J.D., and T.A., who all identified Green as the shooter.[2]

---

[2] We note that T.A. initially told the police that she did not see the shooting, but saw a person approach the bar with a firearm.

¶8      In addition, the State called Detective Scott Lackovic, who testified that he watched the original surveillance video. Lackovic explained that the video was not obtained on the day of the shooting because the "forensic investigator didn't have the equipment capable of retrieving the video from the system that the bar had." Lackovic said that a request to preserve the video was made before he went on leave, but he was not aware if the department obtained a copy. According to Lackovic, the video did not show who shot R.L.

¶9      The jury found Green guilty on all three counts as charged. The trial court imposed a fifty-five year global sentence consisting of forty years of initial confinement and fifteen years of extended supervision.

¶10     Green filed a postconviction motion arguing ineffective assistance of counsel based on counsel's failure to investigate two potential alibi witnesses, Linda Green and Anthony Love.[3]  In support, Green filed affidavits from Linda and Anthony.

¶11     Linda's affidavit averred that she was Green's sister and on August 2, 2014, she went over to Green's residence during the daytime and hung out with Green's girlfriend, Renee Jordan. Around 7:45 p.m. to 8:00 p.m., Green arrived home from work. That evening, they all stayed in and ate pizza. When Linda went to bed around midnight or 1:00 a.m., Green was there. Green was also there when Linda got up the following morning.

---

[3] The motion also alleged that the alibi witness evidence constituted newly discovered evidence and that trial counsel was ineffective for failing to move into evidence two photographs. These issues are not pursued on appeal.

¶12 Anthony's affidavit averred that "[o]n the date of the incident," he worked with Green at a car wash. Anthony said that Green declined his invitation to go to the bar on Fifth and Keefe that evening. Anthony arrived at the bar between 8:00 p.m. and 9:00 p.m. and stayed for less than half an hour. Anthony did not see Green at the bar.

¶13 After additional briefing, the postconviction court denied Green's motion without an evidentiary hearing. The court found that Anthony's affidavit was "vague and insufficient" and observed that there was no allegation that Green had informed trial counsel of his alibi. The court stated that Green's claim that trial counsel should have located the alibi witnesses on his own without any guidance is "absurd." The court stated that if Green was with his sister Linda and girlfriend at the time of the shooting, "he of all people would have known[.]" In addition, the court concluded that there was not a reasonable probability that Linda's or Anthony's testimony would have altered the outcome of the trial.

## DISCUSSION

¶14 On appeal, Green contends that the trial court should have held an evidentiary hearing on his motion to dismiss. In addition, Green contends that the postconviction court should have held an evidentiary hearing on his ineffective assistance of counsel claim. As discussed below, we disagree.

### I. Motion to Dismiss

¶15 An evidentiary hearing on a pre-trial motion to dismiss is not "a right as a matter of course[.]" *See State v. Velez*, 224 Wis. 2d 1, 11, 589 N.W.2d 9 (1999). If a motion alleges sufficient facts which would entitle the defendant to relief, an evidentiary hearing is required. *Id.* at 17 (citing *Nelson v. State*, 54

Wis. 2d 489, 497-98, 195 N.W.2d 629 (1972)). Whether a defendant has alleged sufficient facts is a question of law that we review *de novo*. **State v. Bentley**, 201 Wis. 2d 303, 310, 548 N.W.2d 50 (1996).

¶16 However, the trial court has the discretion to deny a motion without an evidentiary hearing if: "(1) the defendant failed to allege sufficient facts in his or her motion to raise a question of fact; (2) the defendant presented only conclusory allegations; or (3) the record conclusively demonstrates that the defendant is not entitled to relief." **Velez**, 224 Wis. 2d at 17. In addition, where the trial court has discretion to grant an evidentiary hearing, the trial court must take into consideration "the record, the motion, counsels' arguments and/or offers of proof, and the law." **Id.** at 17-18 (citing **State v. Garner**, 207 Wis. 2d 520, 534-35, 558 N.W.2d 916 (Ct. App. 1996)).

¶17 To start, we observe that during the trial court proceedings, Green did not request an evidentiary hearing or make any objection when the trial court proceeded to resolve the motion without a hearing. As a result, Green forfeited his request for an evidentiary hearing. *See* **State v. Ndina**, 2009 WI 21, ¶¶29-30, 315 Wis. 2d 653, 761 N.W.2d 612.

¶18 In addition, even if Green's request was not forfeited, Green failed to allege sufficient facts entitling him to an evidentiary hearing. First, Green did not indicate that he was disputing any of the factual circumstances surrounding the police's failure to obtain the original surveillance video or identify an area that needed additional factual development. As a result, the trial court reasonably denied the motion without a hearing. *See* **Garner**, 207 Wis. 2d at 537 (holding that the trial court correctly concluded that an evidentiary hearing was not required

because the defendant offered "no factual basis, legal theory, or area of intended evidentiary development that could have supported his motion").

¶19     Second, Green's due process rights were not violated by the failure of the police to preserve the surveillance video. To establish a due process violation, a defendant must show that the police: (1) failed to preserve evidence that is apparently exculpatory; or (2) acted in bad faith by failing to preserve potentially exculpatory evidence. *State v. Luedtke*, 2015 WI 42, ¶39, 362 Wis. 2d 1, 863 N.W.2d 592.

¶20     Green does not contest the trial court's finding that the evidence was "potentially exculpatory," but argues that the trial court erred in concluding that there was no bad faith. According to Green, the police acted in bad faith because after viewing the video and unsuccessfully attempting to preserve it, they made no further effort to obtain the video.

¶21     Bad faith is shown where: "(1) the officers were aware of the potentially exculpatory value or usefulness of the evidence they failed to preserve; and (2) the officers acted with official animus or made a conscious effort to suppress exculpatory evidence." *Id.*, ¶46 (citation omitted).

¶22     In this case, the record reflects that the police were unable to preserve the evidence because of a technical problem. Subsequently, the detective went on leave and the other officers failed to follow-up. Green does not offer any factual support that the police's failure to collect the video was anything more than negligence. The negligent failure to preserve evidence does not establish bad faith. *See Arizona v. Youngblood*, 488 U.S. 51, 58 (1988); *United States v. Holly*, 940 F.3d 995, 1002 (7th Cir. 2019) (holding that an officer's failure to follow-up

on a surveillance video "may have been negligent, but it does not prove animus or a conscious effort to suppress the video").

¶23 Therefore, we conclude that the trial court did not err in denying Green's motion to dismiss without an evidentiary hearing.[4]

## II. Ineffective Assistance of Counsel

¶24 Green alleges that trial counsel was ineffective for failing to investigate two potential alibi witnesses, Linda and Anthony.

¶25 To prevail on a claim of ineffective assistance of counsel, a defendant must prove both that counsel's performance was deficient and that the defendant was prejudiced by the deficient performance. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). To establish prejudice, a defendant must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.*

¶26 When a circuit court is presented with an ineffective assistance of counsel claim, "it must review the postconviction motion on its face to determine whether the defendant has alleged sufficient facts that would entitle the defendant to relief." *State v. Reynolds*, 2005 WI App 222, ¶8, 287 Wis. 2d 653, 705 N.W.2d 900. We review the sufficiency of the motion *de novo*. *Id.* However, if a motion

---

[4] The State argues that even if the trial court erred, any error was harmless. Because we conclude that the trial court did not err, we do not address harmless error. *See State v. Blalock*, 150 Wis. 2d 688, 703, 442 N.W.2d 514 (Ct. App. 1989) ("[C]ases should be decided on the narrowest possible ground.").

does not raise sufficient facts, presents only conclusory allegations, or if the record conclusively demonstrates that a defendant is not entitled to relief, the circuit court has the discretion to grant or deny a hearing. *State v. Balliette*, 2011 WI 79, ¶18, 336 Wis. 2d 358, 805 N.W.2d 334 (citation omitted).

¶27 In this case, Green's postconviction motion is devoid of any information that trial counsel was ever informed of the two potential alibi witnesses prior to trial. Green's motion does not allege, for example, that the witnesses contacted counsel prior to trial or that counsel should have been aware of the witnesses based on the discovery. Nor does Green allege that he told his attorney about the potential alibi witnesses. *See State v. Allen*, 2004 WI 106, ¶24, 274 Wis. 2d 568, 682 N.W.2d 433 (stating that a hypothetical providing detailed allegations that a defendant had told his attorney of an alibi defense would constitute sufficient facts entitling the defendant to a hearing). As the postconviction court observed, if Green was with his sister Linda and his girlfriend, "he of all people would have known[.]" "[A] lawyer is not ineffective for not pursuing something the defendant knew, but did not reveal." *State v. Eison*, 2011 WI App 52, ¶21, 332 Wis. 2d 331, 797 N.W.2d 890.

¶28 Green argues that the absence of an allegation that he told his attorney about the potential alibi witnesses does not relieve the court of its obligation to conduct an evidentiary hearing. However, an evidentiary hearing is not "a fishing expedition" to discover ineffective assistance of counsel. *Balliette*, 336 Wis. 2d 358, ¶68. "Both the court and the State are entitled to know *what* is expected to happen at the hearing, and *what* the defendant intends to prove." *Id.*

¶29 In addition, even if the jury had heard the information contained in the affidavits, there is not a reasonable probability that the jury would have

9

acquitted Green. *See State v. Sholar*, 2018 WI 53, ¶46, 381 Wis. 2d 560, 912 N.W.2d 89. The affidavits do not account for Green's whereabouts at the time of the shooting, which took place on August 2, 2014 in the early morning around 12:30 a.m. Linda's affidavit indicates she was with Green the evening of August 2, 2014, not the morning of August 2, 2014. Anthony's affidavit avers that "[o]n the date of the incident," he went to the bar between 8:00 p.m. and 9:00 p.m. and stayed less than half an hour. Even if we assume Anthony is referring to the correct date, he was not present at the bar at the time of the shooting, which took place around 12:30 a.m.

¶30 Therefore, we conclude that the postconviction court properly denied Green's ineffective assistance of counsel claim without a hearing.

## CONCLUSION

¶31 For the reasons stated above, we conclude that the trial court did not err in denying the motion to dismiss without an evidentiary hearing and the postconviction court did not err in denying the ineffective assistance of counsel claim without an evidentiary hearing.

*By the Court.*—Judgment and order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5. (2019-20).